Seth D. Berlin (*Pro Hac Vice* Pending)
 (D.C. Bar No. 433611)
 *BerlinS@ballardspahr.com*
**BALLARD SPAHR LLP**
1909 K Street, NW, 12th Floor
Washington, DC 20006-1157
Tel: (202) 661-2200; Fax: (202) 661-2299

Robert S. Gutierrez (State Bar No. 143223)
 *GutierrezR@ballardspahr.com*
Omarr K. Rambert (State Bar No. 334534)
 *RambertO@ballardspahr.com*
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Tel.: (424) 204-4400; Fax: (424) 204-4350

Attorneys for Defendant
DON WINSLOW

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., <br><br> Plaintiff, <br><br> v. <br><br> DON WINSLOW, <br><br> Defendant. | CASE NO. 21CV1635L BGS <br><br> [Assigned for All Purposes to Hon. M. James Lorenz] <br><br> **DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16** <br><br> DATE:  January 24, 2022 <br> TIME:   10:30 a.m. <br> CTRM:  5B <br><br> [No Oral Argument Unless Requested By The Court] <br><br> [*Memorandum of Points and Authorities, Request for Judicial Notice and Declaration of Robert S. Gutierrez filed concurrently herewith*] <br><br> Action Filed:  September 17, 2021 |

DMFIRM #400742222 v17

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on January 24, 2022 at 10:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom 5B of the above-captioned Court, located at 221 West Broadway, San Diego, CA 92101, Defendant Don Winslow ("Defendant") will and hereby does move to strike the Complaint of Plaintiff Dr. Mahendra Amin ("Plaintiff") in its entirety, without leave to amend, pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.

As set forth in the accompanying Memorandum of Points and Authorities, Plaintiff's sole cause of action – defamation – arises out of Defendant's acts in furtherance of his constitutional right of free speech in connection with a public issue.  Specifically, in this action, Plaintiff challenges a single Tweet commenting on a whistleblower complaint submitted to various federal and state agencies alleging that he performed non-consensual and unnecessary hysterectomies and other procedures on women detained by the U.S. Customs and Immigration Enforcement and the resulting investigations (the "Challenged Tweet").  Therefore, under Section 425.16, Plaintiff is required to demonstrate a probability of prevailing on his defamation claim, but he cannot do so for at least three reasons.

First, the Challenged Tweet constitutes constitutionally protected expression of opinion, includes nonactionable rhetorical hyperbole, and is protected by California's fair comment privilege.  Second, the underlying premise of the Challenged Tweet and Defendant's tweets that preceded it – that Plaintiff was under investigation for performing non-consensual and unnecessary hysterectomies and other procedures – is protected by California's absolute privilege for reports of official proceedings and records.  Finally, Plaintiff is a public official for purposes of this case, and he has not pled facts that, if proven, would establish, by clear and convincing evidence, that Defendant posted the Challenged Tweet with constitutional actual malice.

Defendant's Special Motion to Strike is based on this Notice, the accompanying Memorandum of Points and Authorities, Defendant's concurrently-filed Declaration of Robert S. Gutierrez, and his Request for Judicial Notice, the papers, pleadings, and evidence on file in this case, and any such additional papers, arguments and evidence as may be presented before or at any

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

1   hearing of this matter.

2   DATED:  December 21, 2021                    Seth D. Berlin (*Pro Hac Vice* Pending)
                                                 Robert S. Gutierrez
3                                                Omarr K. Rambert
                                                 **BALLARD SPAHR LLP**
4

5                                                By:   */s/ Robert S. Gutierrez*
                                                       Robert S. Gutierrez
6

7                                                Attorneys for Defendant Don Winslow

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    FACTUAL BACKGROUND .................................................................... 4

III.   ARGUMENT ............................................................................................ 9

    A.   Legal Standard Under California's Anti-SLAPP Statute ....................... 9

    B.   Step One:  Dr. Amin's Defamation Claim Arises From Winslow's Exercise Of His Right Of Free Speech Concerning A Public Issue And Matter Of Public Interest. ...................................................................... 10

        1.   Section 425.16(e)(3) Applies To The Challenged Tweet. ........................ 10

        2.   Section 425.16(e)(4) Also Applies To The Challenged Tweet. ............... 11

    C.   Step Two:  Dr. Amin Cannot Demonstrate A Probability Of Prevailing On His Defamation Claim. .................................................................. 11

        1.   The Statements Placed At Issue In The Challenged Tweet Are Protected Opinion, Rhetorical Hyperbole, and Fair Comment. ............... 12

        2.   The Factual Premise Underlving the Challenged Tweet Is An Absolutely Privileged Report of an Official Proceeding. ........................ 17

        3.   Dr. Amin Is A Public Official Who Cannot Demonstrate That The Challenged Tweet Was Made With Actual Malice. ................................... 19

    D.   Dr. Amin's Case Should Be Dismissed With Prejudice. ..................... 24

IV.    CONCLUSION ....................................................................................... 24

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Adelson v. Harris*,
 973 F. Supp. 2d 467 (S.D.N.Y. 2013) ...................................................................15

*Biro v. Condé Nast*,
 807 F.3d 541 (2d Cir. 2015) ...............................................................................22

*CACI Premier Tech., Inc. v. Rhodes*,
 536 F.3d 280 (4th Cir. 2008) ...............................................................................16

*Carrasco v. HSBC Bank USA Nat'l Ass'n*,
 2011 U.S. Dist. LEXIS 138137 (N.D. Cal. Dec. 1, 2011) .....................................22

*Chau v. Lewis*,
 771 F.3d 118 (2d Cir. 2014) ...............................................................................16

*Clifford v. Trump*,
 818 F. App'x 746 (9th Cir. 2020).........................................................................24

*Cochran v. NYP Holdings, Inc.*,
 58 F. Supp. 2d 1113 (C.D. Cal. 1998) ..................................................................14

*Crane v. Arizona Republic*,
 972 F.2d 1511 (9th Cir. 1992).........................................................................18, 19

*Global Telemedia Int'l, Inc. v. John Doe 1*,
 132 F. Supp. 2d 1261 (C.D. Cal. 2001) .............................................................13, 15

*Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*,
 398 U.S. 6 (1970) ...........................................................................................12, 14

*Greenberg v. Western CPE*,
 2013 U.S. Dist. LEXIS 56901 (C.D. Cal. Apr. 15, 2013)......................................18

*Harte-Hanks Commc'ns v. Connaughton*,
 491 U.S. 657 (1989) .........................................................................................20, 23

*Hatfill v. New York Times Co.*,
 488 F. Supp. 2d 522 (E.D. Va. 2007)....................................................................21

*Herring Networks, Inc. v. Maddow*,
 8 F.4th 1148 (9th Cir. 2021)...........................................................................9, 15, 24

*Kaelin v. Globe Commc'ns Corp.*,
 162 F.3d 1036 (9th Cir. 1998)..............................................................................21

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
    838 F.2d 1287 (D.C. Cir. 1988) ................................................................23

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013)....................................................................9

*Mayfield v. NASCAR, Inc.*,
    674 F.3d 369 (4th Cir. 2012)....................................................................22

*McCafferty v. Newsweek Media Grp.*,
    955 F.3d 352 (3d Cir. 2020) ....................................................................22

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001)................................................................9, 10

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016)..................................................................22

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ....................................................................................14

*Nat'l Ass'n of Letter Carriers v. Austin*,
    418 U.S. 264 (1974) ..........................................................................14, 20

*Nelson Auto Ctr. v. Multimedia Holdings Corp.*,
    951 F.3d 952 (8th Cir. 2020)....................................................................22

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..........................................................................16, 20

*United States ex. rel. Newsham v. Lockheed Missiles and Space Co.*,
    190 F.3d 963 (9th Cir. 1999) ....................................................................9

*Newton v. NBC, Inc.*,
    930 F.2d 662 (9th Cir. 1990) ....................................................................21

*Nicosia v. De Rooy*,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999) ..............................................15, 22

*Nyabwa v. Facebook*,
    2018 U.S. Dist. LEXIS 13981 (S.D. Tex. Jan. 26, 2018) ........................12

*Oldaker v. Giles, et al.*,
    No. 7:20-cv-00224-WLS-MSH (M.D. Ga., filed Nov. 9, 2020)..............9

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1992)................................................12, 13, 15, 17

*Pippen v. NBCUniversal Media*,
    734 F.3d 610 (7th Cir. 2013)....................................................................22

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

ii

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ................................................................9, 10

*Reeves v. Am. Broad. Cos.*,
   719 F.2d 602 (2d Cir. 1983) ......................................................................19

*Ryniewicz v. Clarivate Analytics*,
   803 F. App'x 858 (6th Cir. 2020) ..............................................................22

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) ..................................................................22, 23

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) .............................................................................20, 23

*Standing Comm. On Discipline v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995) .....................................................................14

*Tah v. Global Witness Publ'g, Inc.*,
   991 F.3d 231 (D.C. Cir. 2021) ...................................................................22

*Turner v. Wells*,
   879 F.3d 1254 (11th Cir. 2018) .............................................................22, 23

*United States v. Sierra Pac. Indus., Inc.*,
   862 F.3d 1157 (9th Cir. 2017) ...................................................................18

*Walker v. Beaumont Indep. Sch. Dist.*,
   938 F.3d 724 (5th Cir. 2019) .....................................................................22

*Zochlinski v. Regents of the Univ. of Cal.*,
   2015 U.S. Dist. LEXIS 149941 (E.D. Cal. Nov. 4, 2015) ..........................12

**California Cases**

*Blatty v. New York Times Co.*,
   42 Cal. 3d 1033 (1986) ..............................................................................16

*Braun v. Chronicle Pub'g Co.*,
   52 Cal. App. 4th 1036 (1997) ....................................................................18

*Brodeur v. Atlas Entm't, Inc.*,
   248 Cal. App. 4th 665 (2016) ....................................................................10

*Carver v. Bonds*,
   135 Cal. App. 4th 328 (2005) ...............................................................18, 19

*Daniel v. Wayans*,
   8 Cal. App. 5th 367 (2017) ........................................................................10

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

*Gallimore v. State Farm Fire & Cas. Ins. Co.*,
    102 Cal. App. 4th 1388 (2002)...................................................................................9

*Ghafur v. Bernstein*,
    131 Cal. App. 4th 1230 (2005)................................................................................20

*Good Gov't Grp., Inc. v. Super. Ct.*,
    22 Cal. 3d 672 (1978).......................................................................................12, 13

*Gregory v. McDonnell Douglas Corp.*,
    17 Cal. 3d 596 (1976).............................................................................................12

*Healthsmart Pac., Inc. v. Kabateck*,
    7 Cal. App. 5th 416 (2016).....................................................................................17

*Howard v. Oakland Tribune*,
    199 Cal. App. 3d 1124 (1988).................................................................................18

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*,
    140 Cal. App. 4th 515 (2006)...........................................................................12, 15

*J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*,
    247 Cal. App. 4th 87 (2016)...................................................................................19

*Jackson v. Mayweather*,
    10 Cal. App. 5th 1240 (2017).................................................................................10

*Kahn v. Bower*,
    232 Cal. App. 3d 1599 (1991)...........................................................................20, 21

*Lieberman v. KCOP Television, Inc.*,
    110 Cal. App. 4th 156 (2003).................................................................................11

*Moyer v. Amador Valley Joint Union High Sch. Dist.*,
    225 Cal. App. 3d 720 (1990)..................................................................................14

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021).....................................................................................12

*Nygård, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008)..........................................................................10, 11

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007)...........................................................................................17

*Whelan v. Wolford*,
    164 Cal. App. 2d 689 (1958)..................................................................................17

*Young v. CBS Broad., Inc.*,
    212 Cal. App. 4th 551 (2012)...........................................................................20, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

1  **Other State Cases**

2  *Doctors Convalescent Ctr., Inc. v. East Shore Newspapers, Inc.*,
3      104 Ill. App. 2d 271 (1968)..................................................................................21

4  *Green v. Northern Publishing Co.*,
       655 P.2d 736 (Alaska 1982)............................................................................20, 21
5

6  **California Statutes**

   California Civil Code § 425.16 ............................................................... *passim*
7
8  California Civil Procedure Code § 47(d) ................................................. *passim*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Plaintiff in this case, Dr. Mahendra Amin, is an OB/GYN who contracted to provide gynecological medical services to detainees held by the U.S. Immigration and Customs Enforcement at a Georgia detention center.  He stands accused of performing a number of unnecessary hysterectomies and other procedures on female detainees, and doing so without explaining to them the nature of the procedures or obtaining their consent.  In September 2020, several advocacy groups filed a whistleblower complaint with ICE, DHS and the Georgia facility, detailing the tragic stories of numerous victims of this misconduct and reciting the observations of a nurse at the facility who described Dr. Amin as a "uterus collector."  Almost immediately, that whistleblower complaint sparked multiple investigations, including by the DHS Office of Inspector General and a House subcommittee, and ultimately led to a criminal investigation by the FBI, a civil lawsuit by more than 40 women, and a detailed review of the circumstances by various medical experts who found that Dr. Amin engaged in an "alarming pattern" of performing non-consensual and unnecessary gynecological procedures.  To undersigned counsel's knowledge, each of the aforementioned official investigations remains ongoing.

Given the heated public debate over immigration policy and the treatment of detainees, the whistleblower complaint garnered immediate attention in news reports and drew harsh criticism by numerous commentators.  These reports detailed the women's experiences, relayed in heart-wrenching interviews with the victims and their lawyers.  The news reports also recounted that, in 2015, Dr. Amin was part of a $520,000 settlement with the U.S. Department of Justice and the Georgia Attorney General over accusations that he ordered unnecessary tests on pregnant patients and defrauded the Medicaid and Medicare programs by submitting false claims.

After several days of this widespread news coverage and commentary, Defendant Don Winslow, a bestselling author and frequent advocate for progressive political causes, did what millions of Americans do every day:  he tweeted.  His initial tweets on this matter hyperlinked to a sampling of the many news stories about the whistleblower complaint and the resulting official investigations.  Later tweets also conveyed his deeply-held views that Dr. Amin's conduct was

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

DMFIRM #400742222 v17

1

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

both inexcusable and the product of a Presidential administration that viewed the mistreatment of detainees, including women and young children, as a badge of honor.

After waiting a year, Dr. Amin has now sued Winslow over just one of those tweets – sent well into the firestorm of media attention and critical commentary sparked by the whistleblower complaint.  Ignoring Winslow's own prior tweets hyperlinking to some of that news coverage, Dr. Amin focuses on a later tweet harshly criticizing him for performing "illegal hysterectomies" and "forced sterilization," labelling him a "BUTCHER," asserting "This is a HORRIFIC CRIME," and lambasting "Trump and @DHSgov" for the treatment of detainees, including by Dr. Amin.  Dr. Amin asserts a single claim for defamation and, remarkably, demands $15 million in damages from Winslow for that lone tweet.  Dr. Amin has not – with the exception of MSNBC, which Dr. Amin has sued in the Southern District of Georgia – challenged the substantial prior news coverage and commentary (including elsewhere on Twitter) that reported and commented on his alleged misconduct.  By targeting Winslow, a vocal supporter of liberal causes (and MSNBC, home to a number of prominent liberal-leaning pundits), to the exclusion of all other news outlets and commentators, Dr. Amin is plainly using meritless litigation to stifle critical speech by a perceived political adversary.  In sum, this is a classic SLAPP lawsuit.[1]

Fortunately for Winslow, California has one of the strongest anti-SLAPP statutes in the nation, Cal. Code Civ. Proc. ("C.C.P.") § 425.16, and the Ninth Circuit has repeatedly held it applies in federal court.  Under Section 425.16, because Winslow can easily show that his tweet arises from his right to speak on a public issue, the burden falls to Dr. Amin to demonstrate a probability of prevailing on each element of his defamation claim.  While it is *Dr. Amin*'s burden, we explain below why the tweet at issue, and in particular the four specific phrases he challenges, Compl. ¶¶ 3, 87, are non-actionable as a matter of law for multiple, independent reasons.

First, the tort of defamation requires a false and defamatory statement of *fact*, and cannot be used to punish opinions and commentary.  Readers of Winslow's tweet would easily understand, both from the language he used and the context, that he was expressing his opinion

---

[1] SLAPP is an acronym that stands for "Strategic Lawsuit Against Public Participation."

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

about the accusations against Dr. Amin and the government's larger immigration policy. His comments were posted on Twitter, a well-known forum for expressing opinions in a shorthand, punchy fashion, and they addressed an ongoing public controversy. The contents of his tweet alert readers that it reflected his opinions, including, for example, his frequent use of "all-caps" and pointed language (*e.g.*, "BUTCHER" and "HORRIFIC"), and his blunt assessments of the government's immigration policy (*e.g.*, asserting conduct undertaken "at the direction of Trump and @DHSgov"). Significantly, there is nothing in Winslow's tweets suggesting that he had any first-hand knowledge of events at the Georgia facility or had performed any investigation beyond reviewing the news coverage he posted earlier in his tweet thread. As such, readers of his tweet would properly understand that he was conveying his own conclusions based on the then-publicly available information. Taken together, the interrelated doctrines of opinion, rhetorical hyperbole, and fair comment – all of which are determined as a matter of law by the Court – protect the rights of individuals like Winslow to opine and comment in this way, especially when his comments addressed the conduct of public officials and contractors like Dr. Amin and involved something as vital as performing forced hysterectomies and other unnecessary procedures on detainees.

Second, even if Dr. Amin were somehow able to establish that Winslow's tweet is properly understood not as opinion but as an assertion of fact, the accusations against Dr. Amin – which were based on the whistleblower complaint, the prior $520,000 settlement, and the newly-launched investigations – are absolutely privileged under California Civil Code § 47(d). That privilege protects the ability to describe and discuss official proceedings, even if the allegations at issue later turn out to be false. Here, to the extent those official proceedings were accurately described in the news reports Winslow posted earlier in his tweet thread and formed the basis for his conclusions in the challenged tweet, those accusations are absolutely privileged.

Finally, because the challenged tweet addresses Dr. Amin's work as a government contractor, he is treated as a public official who is required to plead – and ultimately prove by clear and convincing evidence – that Winslow posted his tweet with constitutional actual malice – *i.e.*, that he either knew the tweet was false or was subjectively aware that it was probably false, yet published it anyway. Dr. Amin relies solely on boilerplate allegations that merely parrot the

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

1   actual malice standard, instead of pleading *facts* that, if proven, would constitute clear and

2   convincing proof of actual malice, as required.  Nor could he plead such facts here in any event,

3   given that Winslow relied on (and tweeted) multiple reports by reputable news organizations,

4   circumstances that *negate* a finding of actual malice as a matter of law.

5        At bottom, Winslow circulated and relied on privileged reports of the allegations against

6   Dr. Amin and expressed his opinion that he believed them, without any subjective awareness that

7   his belief was false.  In those circumstances, there can be no liability for defamation as a matter of

8   law, and therefore Dr. Amin cannot demonstrate a probability of prevailing in this action.  As a

9   result, the Court should strike his Complaint, dismiss his SLAPP suit with prejudice, and award

10  Winslow his reasonable attorneys' fees and costs, as mandated by Section 425.16(c)(1).

11  ## II.   **FACTUAL BACKGROUND**

12       Plaintiff Amin is an OB/GYN who contracted to provide gynecological services to female

13  detainees held at the Irwin County Detention Center ("ICDC") in Georgia in the custody of U.S.

14  Immigration and Customs Enforcement ("ICE"), a division of the U.S. Department of Homeland

15  Security ("DHS").  Compl. ¶ 31.

16       On September 14, 2020, several advocacy groups filed a whistleblower complaint with

17  DHS, ICE and ICDC, alleging that an alarming number of hysterectomies and other procedures,

18  many of which were unnecessary and/or non-consensual, were being performed on immigrant

19  women detained at ICDC (the "Whistleblower Complaint").  *Id.* ¶¶ 42, 46; Ex. A (copy of

20  complaint).[2]  In addition to reports from female ICDC detainees, the Whistleblower Complaint

21  included detailed allegations from Dawn Wooten, a licensed nurse employed by ICDC, describing

22  her conclusion that many detainees had unnecessary surgeries and alleging that the doctor

23  performing them had failed to obtain proper informed consent.  Ex. A (quoting Wooten's

24  description of doctor as the "uterus collector").  The allegations in the Whistleblower Complaint

25  became a major topic of public discourse, as the news media widely reported on the matter and

26

27  [2] True and correct copies of the exhibits referenced herein are attached the Declaration of Robert
    S. Gutierrez filed concurrently herewith (hereinafter, "Ex. __").  Because they are not offered for
    their truth and are easily authenticated, Winslow has filed herewith a Request for Judicial Notice
28  asking the Court to consider these materials as part of the context for Winslow's tweets.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S
COMPLAINT PURSUANT TO C.C.P. § 425.16**

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1  ultimately identified Dr. Amin as the doctor who had performed the procedures.  Ex. C (news

2  report identifying Dr. Amin as doctor at issue); *see also* Compl. ¶¶ 47-48 (acknowledging that

3  "[t]he news media aired various stories about Dr. Amin beginning on or about September 14,

4  2020," some five days before the challenged tweet).[3]  A number of those reports noted that, in

5  2015, Dr. Amin was investigated by the Justice Department for false claims submitted to Medicaid

6  and Medicare, resulting in a $520,000 settlement.  *Id.* (reporting same); Ex. D (DOJ statement).

7        Public officials were quick to speak out against the inhumane treatment alleged in the

8  Whistleblower Complaint.  On September 15, 2020, U.S. House Speaker Nancy Pelosi demanded

9  an investigation into the allegations, Ex. E (statement by Speaker Pelosi), and Congressional

10  Democrats sent a letter to the DHS Office of Inspector General ("OIG") requesting that it

11  immediately commence an investigation into the matter, Ex. F (letter).  Later that day, the OIG

12  announced that it would be opening an investigation into the issues raised in the Whistleblower

13  Complaint, which it did by the following day.  Ex. G.  On September 18, 2020, members of the

14  U.S. Senate, including then-Senator Kamala Harris and Senator Bernie Sanders, sent a letter to the

15  OIG urging it to investigate the matter thoroughly and expeditiously.  Ex. H (letter).  Within days,

16  the House Homeland Security and Oversight & Reform Committees announced that they were

17  also launching a joint investigation into the allegations.  Ex. I (statement announcing same).

18        Defendant Don Winslow ("Defendant") is a bestselling author and frequent political

19  advocate.  Compl. ¶ 37.  Following several days of the above-described news coverage and

20  statements by public officials, Winslow posted a series of tweets about the Whistleblower

21  Complaint and Dr. Amin's involvement in the conduct it described.  First, he tweeted hyperlinks

22  to news reports describing the Whistleblower Complaint, the resulting investigations, and the prior

23  $520,000 settlement.  He then posted tweets denouncing Dr. Amin's performance of unnecessary

24  and non-consensual hysterectomies on female ICDC detainees and condemning the governmental

25  policies under which those procedures were performed.  *Id.* ¶¶ 46, 50.

---

26

27  [3] Various news reports about the Whistleblower Complaint aired on MSNBC programs from
September 15 to September 17, 2020, prior to Winslow's tweets.  Dr. Amin has sued MSNBC
over those reports in the United States District Court for the Southern District of Georgia.  Ex. B
28  (complaint).

The only tweet from this thread that Dr. Amin challenges in this action was posted on September 19, 2020, five days into this controversy, at 10:44 p.m. Pacific time (the "Challenged Tweet").  Compl. ¶ 50; Ex. J (tweet).[4]  The Challenged Tweet is reproduced below, as it appeared on Twitter:



Although Dr. Amin acknowledges that there was substantial prior media coverage, Compl. ¶ 48, his Complaint omits the fact that Winslow himself circulated and relied on some of that coverage in his previous tweets.  For example, Winslow had earlier tweeted a link to a *Yahoo News* article (Ex. K, the "*Yahoo News* Tweet") that reported, *inter alia*, on the allegations of non-consensual and unnecessary hysterectomies at ICDC and the fact that "[t]he House Judiciary Subcommittee on Immigration and Citizenship is investigating the whistleblower complaint." That *Yahoo News* article (Ex. L) in turn hyperlinked to several *Business Insider* articles describing the controversy, including:

---

[4] Dr. Amin's Complaint depicts an image of this tweet time-stamped September 20, 2020 at 1:44 a.m. Eastern time.  This three-hour difference in time zone is not material to any issue in the case.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

- a September 14, 2020 *Business Insider* article entitled, "A whistleblower is accusing doctors at an ICE detention center of surgically removing the wombs of some immigrant detainees" (Ex. M);

- a September 15, 2020 *Business Insider* article, entitled "The House immigration subcommittee is investigating a whistleblower complaint accusing doctors at an ICE detention center of surgically removing detainees' wombs" (Ex. N), describing the House's official investigation into the allegations;[5] and

- a September 16, 2020 *Business Insider* article, entitled "Lawyers say they have identified the doctor at the center of a whistleblower complaint alleging women held in a Georgia detention center had hysterectomies without their knowledge" (Ex. C), identifying Dr. Amin as that doctor, and quoting his assertion to news outlets that "he only performed 'one or two hysterectomies in the past two [or] three years.'"

Before posting the Challenged Tweet, Winslow had also retweeted a September 17, 2020 *NPR* article (Ex. O, the "*NPR* Retweet"), entitled "Without DHS Witnesses In Hearing, Whistleblower Claims Likely Go Unaddressed" (Ex. P), in which NPR referenced the Whistleblower Complaint and stated, "With Chad Wolf rejecting a subpoena to appear, lawmakers have no one in today's hearing to ask about reports of questionable hysterectomies performed on ICE detainees . . . ." In the *NPR* Retweet, Winslow commented on that article, expressing his frustration at both DHS Director Wolf's refusal to appear and the House leadership's failure to compel him to do so, stating, "Dear @SpeakerPelosi,  For once, ENFORCE the subpoena and force @DHS_Wolf (Chad Wolf) to testify in open hearings.  You have options here.  You can compel his testimony or have every single member of the Democratic House humiliate Wolf every single day until he agrees to testify."  Ex. O.

Several of Winslow's tweets in the thread preceding the Challenged Tweet expressed

---

[5] The September 15, 2020 *Business Insider* article also reported that, "[i]n December 2017, a federal judge issued a restraining order after it was revealed that the Office of Refugee Resettlement was trying to prevent detained women from obtaining abortions," and that "[i]n 2019, MSNBC reported that the office, led by Trump appointee Scott Lloyd, was also maintaining a spreadsheet tracking the pregnancies of detained immigrants."  Ex. N.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

similar opinions.  For example, he retweeted a post by lawyer and public policy advocate Maya Harris (the "Harris Retweet") in which she asked, "Have 'pro-life' Republicans expressed outrage and demanded an investigation yet into reports of immigrant women being forced to have their uteruses removed from their bodies?"  Ex. Q.  Winslow commented on Harris' post, noting, "Important tweet.  Important question."  *Id.*  And only minutes before the Challenged Tweet, Winslow tweeted:  "I think it's important to remind the world that Donald Trump and Stephen Miller's hateful and cruel immigration policies have now resulted in . . . forced hysterectomies on immigrant women.  Did you hear what I said?  They are performing forced hysterectomies on immigrant women."  Ex. R.

In the weeks and months that followed the Challenged Tweet, the allegations of the Whistleblower Complaint continued to gain significant, additional traction.  On September 26, 2020, the U.S. Congressional Hispanic Caucus and House Judiciary Committee led a delegation of federal lawmakers on an investigatory visit of ICDC, after which Congresswoman Nanette Diaz Barragán described their findings as "horrific."  Ex. S.  The FBI opened an investigation into Dr. Amin's treatment of female ICDC detainees and, in May 2021, expanded that probe to include his alleged mistreatment of non-detainees.  Ex. T (detailing same and also reporting Dr. Amin's prior settlement of "serious malpractice lawsuits," including one in which "a young woman in his care died" and another in which "a baby died").  Also in May 2021, the government began the process of closing ICDC, first by transferring all remaining women out of the facility and ultimately by severing ties with it.  Ex. U.  On December 3, 2021, as part of their investigation, the chairs of Congress' Committee on Homeland Security and Committee on Oversight and Reform, and two Subcommittees, sent a letter to the Georgia Composite Medical Board's Director of Investigations describing an independent gynecologist's conclusion, after reviewing various records, that Dr. Amin's treatment of patients had not met acceptable standards.  Ex. V.  This finding was consistent with the conclusion of a team of nine board-certified OB-GYNs and two nursing experts affiliated with academic medical centers who reviewed 3,200 pages of medical records from 19 female ICDC detainees and found an "alarming pattern" of subjecting women to "unwarranted gynecological surgeries, in most cases performed without consent."  *See* Ex. W.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16

1   In addition to the multiple Congressional, law enforcement, and medical investigations into

2   Dr. Amin's conduct, more than 40 women filed a civil class action lawsuit, *Oldaker v. Giles, et*

3   *al.*, No. 7:20-cv-00224-WLS-MSH (M.D. Ga., filed Nov. 9, 2020), against Dr. Amin, ICE, ICDC,

4   and others, asserting, *inter alia*, multiple claims against Dr. Amin for battery and medical

5   malpractice.  Ex. W (complaint).  In October 2021, the Court stayed the *Oldaker* case and all

6   pending deadlines until January 7, 2022, because other investigations into the alleged misconduct

7   were ongoing.  Ex. X.

8   Against this backdrop, Winslow respectfully submits that the Challenged Tweet is non-

9   actionable as explained below.  He therefore requests the Court to strike Dr. Amin's Complaint

10  under the anti-SLAPP statute and to dismiss his defamation claim with prejudice.

11  **III.   ARGUMENT**

12  **A.   Legal Standard Under California's Anti-SLAPP Statute**

13  California's anti-SLAPP statute authorizes a defendant to file a special motion to strike an

14  unmeritorious lawsuit that arises "from any act . . . in furtherance of the [defendant's] right of

15  petition or free speech under the United States Constitution or the California Constitution in

16  connection with a public issue."  C.C.P § 425.16(b)(1).  A special motion to strike "shall" be

17  granted unless the plaintiff can demonstrate "there is a probability that [he] will prevail on the

18  claim."  *Id.*  "The goal is to eliminate meritless or retaliatory litigation at an early stage of the

19  proceedings."  *Gallimore v. State Farm Fire & Cas. Ins. Co.*, 102 Cal. App. 4th 1388, 1396

20  (2002).  The California Legislature amended the statute in 1997 to state expressly that its

21  provisions should be "broadly construed."  C.C.P. § 425.16(a).  Because the anti-SLAPP statute

22  imposes substantive limitations on state law torts, the Ninth Circuit has repeatedly held that

23  litigants may file anti-SLAPP motions in federal court diversity actions.  *See, e.g.*, *U.S. ex. rel.*

24  *Newsham v. Lockheed Missiles and Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999); *Metabolife*

25  *Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001); *Makaeff v. Trump Univ., LLC*, 715 F.3d

26  254 (9th Cir. 2013); *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828,

27  833 (9th Cir. 2018); *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1161 (9th Cir. 2021).

28  In adjudicating special motions to strike, courts follow a two-step process.  A court "first

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

9

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

looks to see whether the moving party has made a threshold showing that the challenged causes of action arise from protected activity." *Brodeur v. Atlas Entm't, Inc.*, 248 Cal. App. 4th 665, 674 (2016). "If the moving party meets this threshold requirement, the burden then shifts to the other party to demonstrate a probability of prevailing on its claims." *Id.*; *see also Metabolife*, 264 F.3d at 840 (applying two-step process under California's anti-SLAPP statute). "[A] defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for his or her claims or when no sufficiently substantial evidence exists to support a judgment for him or her." *Planned Parenthood*, 890 F.3d at 833. Here, the three issues Winslow raises in this motion fall into the former category, as they are all issues that are properly adjudicated as a matter of law based on Dr. Amin's failure to state a claim.

**B. Step One:  Dr. Amin's Defamation Claim Arises From Winslow's Exercise Of His Right Of Free Speech Concerning A Public Issue And Matter Of Public Interest.**

The anti-SLAPP statute protects any "act . . . in furtherance of [a] person's right of petition or free speech under the United States or California Constitution in connection with a public issue." C.C.P. § 425.16(b)(1). Section 425.16(e) defines that term as including "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Both Sections 425.16(e)(3) and (e)(4) apply to the Challenged Tweet.

**1. Section 425.16(e)(3) Applies To The Challenged Tweet.**

"[A] broad reading of 'public forum' comports with the fundamental purpose underlying the anti-SLAPP statute." *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1038 (2008) (citing *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 468, 476-77 (2000)). For purposes of the anti-SLAPP statute, "web sites accessible to the public . . . are 'public forums.'" *Daniel v. Wayans*, 8 Cal. App. 5th 367, 387 (2017) (quoting *Nygård*, 159 Cal. App. 4th at 1039), as are social media platforms like Twitter, *id.* (holding that pictures published on the defendant's Twitter account were statements made in a public forum); *see also Jackson v. Mayweather*, 10 Cal. App.

5th 1240, 1252 (2017) (holding that defendant's posts on Facebook and Instagram were made in a public forum within the meaning of California's anti-SLAPP statute).  The Challenged Tweet was therefore made in a public forum.

The Challenged Tweet was also made in connection with an issue of public interest.  It addressed widely-reported and shocking allegations that Dr. Amin was performing non-consensual and unnecessary hysterectomies and other procedures on women detained at ICDC.  Several publications and prominent public officials acknowledged the gravity of the allegations, including U.S. House Speaker Nancy Pelosi, then-Senator Kamala Harris, and Senator Bernie Sanders.  Indeed, Dr. Amin's Complaint itself describes the tremendous public interest in the allegations of mass hysterectomies on female ICDC detainees.  *See* Compl. ¶¶ 47-48 (acknowledging that the Whistleblower Complaint was shared "widely with the news media" and that the "news media aired various stories about Dr. Amin").  As such, the topic of the Challenged Tweet easily qualifies as a matter of "public interest" under Section 425.16(e)(3).  *See, e.g.*, *Nygård*, 159 Cal. App. 4th at 1042 (statute applies to "any issue in which the public is interested").

### 2.  Section 425.16(e)(4) Also Applies To The Challenged Tweet.

Section 425.16(e)(4) of the anti-SLAPP statute "provides a catch-all for 'any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'"  *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 164 (2003).  For the reasons set forth in Section III.A.1., *supra*, the Challenged Tweet – addressing both treatment of immigration detainees held in custody and the government's immigration policy more broadly – constitutes core political speech in connection with both a public issue and an issue of public interest.

### C.  Step Two:  Dr. Amin Cannot Demonstrate A Probability Of Prevailing On His Defamation Claim.

Because Winslow has easily made the threshold showing that Dr. Amin's defamation claim triggers the anti-SLAPP statute's protections, the burden shifts to Dr. Amin to establish a probability that he will prevail on the merits of his defamation claim.  As demonstrated below, he cannot come anywhere near meeting this burden for multiple, independent reasons.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

1.   **The Statements Placed At Issue In The Challenged Tweet Are Protected Opinion, Rhetorical Hyperbole, and Fair Comment.**

Dr. Amin cannot meet his burden of demonstrating a probability of prevailing on his defamation claim because the Challenged Tweet is protected by three interrelated doctrines: the protections for expressions of opinion, rhetorical hyperbole, and fair comment.

An "essential element of an action for libel is a false statement of *fact*." *Good Gov't Grp., Inc. v. Super. Ct.*, 22 Cal. 3d 672, 680 (1978) (emphasis added). Accordingly, a defamation claim fails where the statements at issue constitute mere opinion, fair comment, and/or rhetorical hyperbole. *See, e.g.*, *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1992) (applying First Amendment to protect defendant's expression of opinion about attorney's conduct at high profile trial); *Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 14 (1970) (recognizing First Amendment protection for "rhetorical hyperbole"); *Zochlinski v. Regents of the Univ. of Cal.*, 2015 U.S. Dist. LEXIS 149941, at *24-25 (E.D. Cal. Nov. 4, 2015) ("doctrine of 'fair comment' is a common law right, 'long recognized in California, which protect[s] expressions of opinion about public officials'" and others, even where comment is not "reasonable or moderate," but published for "'purpose of giving the public the benefit of [the] comment'") (citations omitted). Whether an allegedly defamatory publication falls into one of these protected categories, or is instead understood as a statement of fact, is a question of law for the court, *see, e.g.*, *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 601 (1976), and is properly resolved on an anti-SLAPP motion, *see, e.g.*, *Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 528-31 (2006) (reversing order denying defendant's anti-SLAPP motion because plaintiff could not show the statements were actionable libel rather than protected opinion).

**The Context:** Relevant to all three of these doctrines is the *context* in which Winslow posted the Challenged Tweet. First, it was disseminated on Twitter, known as a forum for expressing opinions about controversial issues, often in a pointed and colorful manner within the confines of the platform's 280-character limit. *See, e.g.*, *Nyabwa v. Facebook*, 2018 U.S. Dist. LEXIS 13981, at *2 (S.D. Tex. Jan. 26, 2018) ("social media sites like Facebook and Twitter have become the equivalent of a public forum for sharing ideas and commentary"); *see also Murphy v.*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

*Twitter, Inc.*, 60 Cal. App. 5th 12, 40-41 (2021) (noting Twitter's expressed mission of "giv[ing] everyone the power to create and share ideas and information instantly without barriers"). As such, the Challenged Tweet appeared in a "forum in which a reader would be likely to recognize that the critiques of" Dr. Amin and other participants in this high-profile controversy "generally represent the highly subjective opinions of the author rather than assertions of verifiable, objective facts." *Partington*, 56 F.3d at 1154.

Second, the Challenged Tweet was posted in the broader context of the heated public debate over immigration policy and, in particular, the government's treatment of detainees. Indeed, Winslow's "comments were made in the middle of a public controversy, where caustic language, exaggeration and fiery rhetoric are regularly employed. In this context, many comments which might be construed as assertions of fact in a more tranquil setting are found, as a matter of law, to be opinions intended to persuade." *Good Gov't Grp.*, 22 Cal. 3d at 698.

Third, the Challenged Tweet was posted by Winslow, who is well-known as a fierce advocate for liberal causes and for expressing his opinions about various issues. Indeed, readers of Winslow's tweets understand that his "purpose . . . is to offer the personal viewpoint of the author" and do not expect him to deliver "a dry description of the facts but to learn of [his] personal perspective." *Partington*, 56 F.3d at 1153 ("a reader would expect him to set forth his personal theories about the facts of the [matter] and the conduct of those involved in them").

**The Contents:**  In addition to the context of the Challenged Tweet, its *contents* also make clear on their face that Winslow was offering opinionated commentary about Dr. Amin and, more broadly, the government's treatment of detainees. These include the tweet's frequent use of ALL CAPS, its placement of quotation marks around the word "Dr," and its use of figurative language like "BUTCHER" and "HORRIFIC CRIME." *See, e.g.*, *Global Telemedia Int'l, Inc. v. John Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) (statement was opinion where it clearly lacked "the formality and polish typically found in documents in which a reader would expect to find facts"). These signals alert the reader that the Challenged Tweet is properly understood as "part of an on-going, free-wheeling and highly animated exchange," that is "full of hyperbole, invective, short-handed phrases and language not generally found in fact-based documents." *Id.*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

1    Indeed, the use of a term like "BUTCHER" and quotation marks around the word "Dr" are

2    what is known in the law of defamation as "rhetorical hyperbole" – language that is not taken

3    literally but "used in a loose, figurative sense."  *Moyer v. Amador Valley Joint Union High Sch.*

4    *Dist.*, 225 Cal. App. 3d 720, 726 (1990); *see also Bresler*, 398 U.S. at 14 (reversing defamation

5    judgment because "even the most careless reader must have perceived that the word ["blackmail"]

6    was no more than rhetorical hyperbole" referring to an aggressive negotiating position, not to the

7    literal crime of blackmail); *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974)

8    (same with respect to term "traitor," which was used hyperbolically to question loyalty, not as

9    literal factual accusation of treason).  Here, the term "BUTCHER" and the quotation marks around

10   "Dr" do not literally mean that Dr. Amin is *in fact* a butcher or *not in fact* a doctor; rather, they are

11   colorful – and legally protected – ways of *opining* about both his practices and his legitimacy as a

12   medical professional.  Not only are these individual phrases protected, but the Challenged Tweet's

13   inclusion of such "loose, figurative, or hyperbolic language" serves more broadly to "negate the

14   impression" it should be understood literally and factually, and instead underscores that Winslow

15   was expressing protected opinions.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990).

16   <u>**Protected Conclusions**</u>:  At bottom, Winslow was expressing his conclusion that he

17   believed the allegations of the Whistleblower Complaint, based on the news reports he had

18   previously hyperlinked and retweeted, and then condemning the conduct at issue.  Where

19   underlying facts – here, the Whistleblower Complaint's accusations against Dr. Amin and the

20   resulting investigations – are known by, or disclosed to, readers, and there is no indication that the

21   defendant has access to additional undisclosed information, his conclusion crediting those

22   allegations is treated as a protected expression of opinion as a matter of law.  *See, e.g.*, *Standing*

23   *Comm. On Discipline v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) ("When the facts underlying

24   a statement of opinion are disclosed, readers will understand they are getting the author's

25   interpretation of the facts presented; they are therefore unlikely to construe the statement as

26   insinuating the existence of additional, undisclosed facts."); *Cochran v. NYP Holdings, Inc.*, 58 F.

27   Supp. 2d 1113, 1121-23 (C.D. Cal. 1998) (even without disclosing specific information on which

28   it was based, statement in newspaper column accusing Johnnie Cochran of having "made up a

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

DMFIRM #400742222 v17

14

police conspiracy theory" was protected opinion because Cochran's conduct during O.J. Simpson trial had "been thoroughly critiqued and debated in the public arena," and there was no "hint" that the statement was "based on any additional, undisclosed facts not known to the public"), *aff'd*, 210 F.3d 1036 (9th Cir. 2000).

In this case, not only were the accusations against Dr. Amin already widely known, but Winslow affirmatively disclosed the information upon which he based his conclusions.  He circulated hyperlinks to various news reports in his prior tweets, thereby providing his readers with immediate access to that information.  *See Global Telemedia*, 132 F. Supp. 2d at 1268 (granting anti-SLAPP motion and holding, *inter alia*, that statements posted in Internet chat-room were protected opinions where defendant had, in a series of postings, provided hyperlinks referencing the information on which the opinions were based, including because "any reader may look at the same document and determine what they think of the information"); *see also Adelson v. Harris*, 973 F. Supp. 2d 467, 484 (S.D.N.Y. 2013) ("The hyperlink is the twenty-first century equivalent of the footnote" and "has become a well-recognized means for an author on the Internet to attribute a source.").  Moreover, nothing in the Challenged Tweet indicated that Winslow based his conclusions on additional facts known only to him.  To the contrary, the Challenged Tweet in no way suggests that he had first-hand knowledge about the procedures or the women involved, whether they had consented to those procedures, or whether they were medically necessary. Where, as here, "it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."  *Partington*, 56 F.3d at 1156 (quoting *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir. 1993)).

In such circumstances, courts routinely treat such a person's conclusions – for example, statements like "This is a HORRIFIC CRIME," "This man performed illegal hysterectomies," or he engaged in "forced sterilization" – as protected opinions, even where they might in a different context sound like statements of fact.  *See, e.g., Herring Networks, Inc.*, 8 F.4th at 1159-60 (affirming order granting anti-SLAPP motion because statement that OAN television network "literally is paid Russian propaganda" was nonactionable opinion, despite its factual nature and

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

15

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

use of term "literally"); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1103 (N.D. Cal. 1999)

("Accusations of criminal activity, like other statements, are not actionable if the underlying facts

are disclosed."); *Integrated Healthcare Holdings, Inc.*, 140 Cal. App. 4th at 528 (statement "that

Jones 'must be an alcoholic,'" even though it otherwise appears factual, was a protected

expression of author's conclusion based on disclosed facts); *see also*, *e.g.*, *Chau v. Lewis*, 771

F.3d 118, 128-29 118 (2d Cir. 2014) (comments in *The Big Short*, book about the 2008 financial

crisis, were protected expressions of opinion, including statements that people like plaintiff were

either "crooks or morons," were deliberately "getting lots of unqualified borrowers to . . . buy a

house they couldn't afford," and were creating the resulting financial instruments out of "whole

cloth"); *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 299-302 (4th Cir. 2008) (statements

that company employed "mercenaries" and "hired killers," who "want to kill for the sake of

killing, . . . torture people, and never have to come under the long arm of the law," were protected

opinions, including where they commented on government policy by making "the point . . . that

current laws are ineffective in regulating military contractors operating abroad").[6]

At the end of the day, Winslow was exercising his First Amendment right to comment on

widely-discussed events and to express his opinion that he believed the accusations against Dr.

Amin.  As the Court of Appeals has emphasized:

> When, as here, an author writing about a controversial occurrence fairly
> describes the general events involved and offers his personal perspective
> about some of its ambiguities and disputed facts, his statements should
> generally be protected by the First Amendment.  Otherwise, there would be no
> room for expressions of opinion by commentators . . . or others whose
> perspectives might be of interest to the public.  Instead, authors of every sort
> would be forced to provide only dry, colorless descriptions of facts, bereft of
> analysis or insight.  There would be little difference between the editorial page

---

[6] The statements that Dr. Amin performed unnecessary and non-consensual hysterectomies "at the
direction of Trump and @DHSgov," Compl. ¶¶ 3, 87, would fail for the same reason.  That clause
is also non-actionable because it is about President Trump and DHS officials, and is not "of and
concerning" Dr. Amin, as required for a defamation claim under both California law, *see, e.g.*,
*Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1046 (1986), and the First Amendment, *see, e.g.*,
*New York Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964) (defamation claim based on statements
not "'of and concerning'" plaintiff was "constitutionally defective"); *see also* Compl. ¶ 86
(conceding statement must be "of and concerning Dr. Amin").  Moreover, that clause does not
make the Challenged Tweet any more or less defamatory, since the allegedly defamatory meaning
is that Dr. Amin performed unnecessary and nonconsensual hysterectomies and other procedures,
regardless of whether he did so on his own or at the behest of administration officials.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

1
2

and the front page, between commentary and reporting, and the robust debate among people with different viewpoints that is a vital part of our democracy would surely be hampered.

3
4
5

*Partington*, 56 F.3d at 1154.  Because the Challenged Tweet conveys Winslow's constitutionally protected opinions, rhetorical hyperbole, and fair comment, Dr. Amin cannot state a claim, let alone establish a probability of prevailing on that claim.  His Complaint should be stricken.

6
7

### 2.     The Factual Premise Underlying the Challenged Tweet Is An Absolutely Privileged Report of an Official Proceeding.

8
9
10
11
12
13
14
15
16

As demonstrated above, the Challenged Tweet is properly viewed as an expression of opinion, and not a statement of fact that could support a claim for defamation.  But even if the tweet were somehow viewed as factual, and putting aside the considerable evidence appearing to confirm the truth of the Whistleblower Complaint, it would still be nonactionable.  Any factual basis for Winslow's opinions is derived from accusations set forth in the Whistleblower Complaint and the resulting investigations, including as described in the articles Winslow hyperlinked to and retweeted in his prior tweets.  As such, Winslow's invocation of those accusations is a report of official proceedings that is absolutely privileged under California Civil Code § 47(d), often described as the "fair report privilege."

17
18
19
20
21
22
23
24
25

Because a required element of a defamation claim is that the challenged statement must be "unprivileged," *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007), where the allegedly "libelous matter complained of is absolutely privileged, . . . the complaint fails to state a legal cause and the language complained of is not actionable," *Whelan v. Wolford*, 164 Cal. App. 2d 689, 693 (1958).  In such circumstances, the Complaint must be stricken under the anti-SLAPP statute.  *See, e.g.*, *Healthsmart Pac., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 420 (2016) (explaining that, "because the challenged statements are protected under the fair report privilege, plaintiffs have not established a probability of success on the merits of their claims," and affirming order granting defendant's anti-SLAPP motion on that basis).

26
27
28

Under Section 47(d), the privilege protects any "fair and true report" in a "public journal" of any "judicial," "legislative" or "other public official proceeding."  Cal. Civ. Code § 47(d)(1).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

DMFIRM #400742222 v17

17

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16**

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1   These requirements are easily satisfied here with respect to Winslow's reliance on the

2   Whistleblower Complaint's accusations against Dr. Amin and the resulting investigations as the

3   basis for the Challenged Tweet's conclusions.  First, Twitter is a mass media platform that easily

4   qualifies as a "public journal."  *See Carver v. Bonds*, 135 Cal. App. 4th 328, 351 (2005); *see also*,

5   *e.g.*, *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1174 (9th Cir. 2017) (recognizing

6   Twitter's role as a "news and social networking service").

7        Second, the Challenged Tweet reported on a public official proceeding.  Under the broad

8   construction given that term by the courts, the Whistleblower Complaint and the resulting

9   investigations constitute "public official proceedings" within the meaning of the privilege under

10  Section 47(d).  *See, e.g.*, *Crane v. Arizona Republic*, 972 F.2d 1511, 1517-1519 (9th Cir. 1992)

11  (congressional investigation into alleged corruption in organized crime and racketeering strike

12  force qualified as a public official proceeding).[7]

13       Third, the Challenged Tweet was a fair and true report of the allegations in those

14  proceedings, namely, that Dr. Amin was performing non-consensual and unnecessary procedures

15  on female detainees.  Compl. ¶ 50.  Winslow's tweets linked to news reports in reputable

16  publications like *Yahoo News*, *Business Insider*, and *NPR* that accurately described the accusations

17  made against Dr. Amin in those proceedings.  For this purpose, the relevant inquiry is not whether

18  Winslow's tweets linking to those reports were "fair" to Dr. Amin in the sense that it told both

19  sides in a balanced fashion, but whether they fairly and accurately described the allegations

20  against him in the official proceedings at the time.  *See, e.g.*, *Carver*, 135 Cal. App. 4th at 351 (to

21  constitute a fair and true report, a publication need only capture "'the substance, the gist, the sting

22  of the libelous charge'") (quoting *Crane*, 972 F.2d at 1519).  The substance or gist of the

23  Whistleblower Complaint was that Dr. Amin was performing hysterectomies and other procedures

24

25  [7] *See also*, *e.g.*, *Greenberg v. Western CPE*, 2013 U.S. Dist. LEXIS 56901, at *14 (C.D. Cal. Apr.
    15, 2013) (investigations and disciplinary actions by state licensing agencies considered public

26  official proceedings for purposes of Section 47(d)); *Braun v. Chronicle Publ'g Co.*, 52 Cal. App.
    4th 1036, 1050-1052 (1997) (state investigatory audit was a public official proceeding for

27  purposes of Section 47(d)); *Howard v. Oakland Tribune*, 199 Cal. App. 3d 1124, 1128 (1988)
    (investigation into expenditure of public funds conducted by state administrative agency deemed

28  public official proceeding for purposes of official report privilege).

DMFIRM #400742222 v17

18

1    on immigrant women without proper medical justification or informed consent, allegations which

2    Winslow accurately reported by circulating multiple articles from the national media.[8]

3           Moreover, a person is not required to quote the official source verbatim, but rather has

4    "literary license" to summarize the gist of the proceedings.  Such leeway is permitted because "a

5    reasonable amount of breathing space is necessary to protect freedom of expression."  *J-M Mfg.*

6    *Co., Inc. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 115 (2016).  Only when the report

7    deviates substantially from the proceedings in a way that produces "a different effect on the mind

8    of the reader" will the privilege not apply.  *Carver*, 135 Cal. App. 4th at 344-45 (citations

9    omitted).  Here, Winslow's tweets would not produce a different effect on a reader than would

10   reviewing the official proceedings themselves, including the Whistleblower Complaint in which

11   an ICDC nurse called him the "uterus collector."  Because Winslow's tweets captured the gist of

12   the allegations against Dr. Amin, they are protected by the privilege.

13          Finally, it bears emphasis that, under the privilege, whether the allegations are ultimately

14   true or false is immaterial.  For the privilege to apply, defendants "need only convey the substance

15   of the proceedings on which they report," regardless of whether they are later established as

16   unfounded – something that to date has decidedly *not* occurred here.  *Crane*, 972 F.2d at 1519; *see*

17   *also Reeves v. Am. Broad. Cos.*, 719 F.2d 602, 606 (2d Cir. 1983) (speaker does not need to

18   "resolve the merits of the charges" or portray plaintiff's version of the facts to invoke the

19   privilege).  Because Winslow's tweets directly hyperlinked to and fairly and accurately described

20   allegations of official proceedings, the premise of Winslow's conclusions, which were based on

21   those allegations, is absolutely privileged under Section 47(d).

22                    **3.**      **Dr. Amin Is A Public Official Who Cannot Demonstrate That The**

23                                **Challenged Tweet Was Made With Actual Malice.**

24          Dr. Amin also cannot demonstrate a probability of prevailing on his defamation claim

25   because he cannot establish that Winslow posted any factual aspect of the Challenged Tweet with

26

27   [8] To the extent that Dr. Amin had denied the allegations, claiming he only performed "one or two
     hysterectomies in the past two [or] three years," he had not done so yet in an official proceeding.

28   In any event, his denial was included in at least one of the hyperlinked news reports.  Ex. C.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1   the requisite state of mind.  Where a plaintiff is a public official, he must demonstrate by clear and

2   convincing evidence that the defendant made the allegedly false and defamatory statement of fact

3   with actual malice, *i.e.*, with knowledge of falsity or reckless disregard for the truth.  *See, e.g.*,

4   *New York Times Co. v. Sullivan*, 376 U.S. at 279-80.  As a result, "[t]here must be sufficient

5   evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the

6   truth of his publication."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see also Harte-Hanks*

7   *Commc'ns v. Connaughton*, 491 U.S. 657, 688 (1989) (plaintiff must show that defendant

8   "actually had a 'high degree of awareness of . . . probable falsity'") (citations omitted).  Of course,

9   the Court need not even reach this issue if it rules that the Challenged Tweet is a protected

10  expression of opinion and not a statement of fact susceptible of a defamation claim.  *See, e.g.*,

11  *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. at 284 ("[b]efore the test of reckless or knowing

12  falsity can be met, there must be a false statement of *fact*") (emphasis added).

13  **Dr. Amin is a Public Official For These Purposes:**  Because Dr. Amin provides services

14  to detainees under a government contract, he is a public figure for purposes of this claim.  Because

15  "the government has a strong interest in ensuring its power directly impacting the lives of so many

16  individuals is not abused," a person who "exercises [government] power . . . does so as a public

17  official for purposes of defamation liability."  *Young v. CBS Broad., Inc.*, 212 Cal. App. 4th 551,

18  562 (2012).

19          For that reason, courts routinely find that government contractors performing a significant

20  government function are public officials for purposes of defamation law because they exercise

21  control over other individuals on behalf of the government, warranting "public scrutiny."  *Id.*; *see*

22  *also id.* at 560 (distinction between being a government *employee* and a government *contractor* is

23  not "dispositive factor" in determining public figure status).  These include, for example, a social

24  worker contracted to serve as a "child welfare worker," because she "possessed considerable

25  power over the lives affected by her work" on behalf of the government, *Kahn v. Bower*, 232 Cal.

26  App. 3d 1599, 1611 (1991), and a court-appointed conservator, *Young*, 212 Cal. App. 4th at 562.

27  Other jurisdictions similarly treat government contractors performing official government

28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

functions as public officials.[9]  In *Green v. Northern Publishing Co.*, 655 P.2d 736 (Alaska 1982), for example, the court ruled that a doctor who contracted with the state to provide medical services to five jails in the Anchorage area was a public official for defamation law purposes.  Even though the plaintiff's position "was not highly visible in the community and usually attracted little public scrutiny," he was deemed a public official because he was responsible for providing both routine and emergency services to inmates held by the government.  *Id.* at 741.[10]

Dr. Amin is likewise properly treated as a public official for purposes of this case.  Having contracted to provide gynecological services to ICE detainees, including invasive procedures such as hysterectomies, Dr. Amin had substantial responsibility and control over both the detainees and the treatment they received, particularly because those detainees generally cannot elect to see another provider.  As such, Dr. Amin's responsibilities are substantively identical to those of the doctor in *Green* who contracted to provide medical services to jail inmates, thereby creating "an independent interest in [his] qualifications and performance."  *Id.*  And his role is analogous to that of the social worker in *Kahn* and the conservator in *Young*, both of whom, like Dr. Amin, exercised their authority over the lives of the individuals under government purview – in his case, deciding to perform and then performing hysterectomies and other significant medical procedures.  As a result, Dr. Amin easily qualifies as a public official for purposes of his defamation claim.

**Dr. Amin Cannot Establish Actual Malice:**  As a public official, Dr. Amin must plead and ultimately prove, by clear and convincing evidence, that Winslow posted the Challenged Tweet with actual malice.  *See Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1039 (9th Cir. 1998); *Newton v. NBC, Inc.*, 930 F.2d 662, 668 (9th Cir. 1990).  Indeed, "every circuit that has

---

[9] "Consistent with the federal nature of the applicable standards, precedents from other jurisdictions" are "persuasive authority" for the public official/actual malice analysis.  *Ghafur v. Bernstein*, 131 Cal. App. 4th 1230, 1237-38 (2005).

[10] *See also, e.g.*, *Hatfill v. New York Times Co.*, 488 F. Supp. 2d 522, 528 (E.D. Va. 2007) (biological weapons expert who was "contractor with the government," including "as a participant . . . in a government-funded program dealing with biological weaponry," was a public official for purposes of his defamation claim), *aff'd*, 532 F.3d 312 (4th Cir. 2008); *Doctors Convalescent Ctr., Inc. v. East Shore Newspapers, Inc.*, 104 Ill. App. 2d 271, 276 (1968) (plaintiff treated as a public official in connection with "operating a nursing home for the care of the ill, infirm, and subnormal and mentally retarded children, some at least of which were placed in plaintiff's nursing home as wards of the State of Illinois through authorized agencies of the State of Illinois").

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1   considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may

2   be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise

3   to a reasonable inference of actual malice." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-02

4   (11th Cir. 2016) (collecting cases).[11]   Here, Dr. Amin has not met his burden to plead facts that, if

5   proven, would constitute clear and convincing proof of actual malice.  *See, e.g.*, *Nicosia*, 72 F.

6   Supp. 2d at 1108 (confirming that "actual malice must be pled with specificity" and granting

7   defendants' anti-SLAPP motion with prejudice where plaintiff failed to do so).

8        Instead of pleading facts, Dr. Amin's allegations are for the most part limited to boilerplate

9   recitations parroting the actual malice standard itself.  For example, he alleges, "[o]n information

10  and belief," that Winslow posted the Challenged Tweet "with actual malice, that is, with actual

11  knowledge of falsity or a reckless disregard for the truth."  Compl. ¶ 102.  But "[t]his kind of

12  conclusory allegation – a mere recitation of the legal standard – is precisely the sort of allegations

13  that *Twombly* and *Iqbal* rejected."  *Mayfield*, 674 F.3d at 378; *see also Carrasco v. HSBC Bank*

14  *USA N.A.*, 2011 U.S. Dist. LEXIS 138137, at **15-16 (N.D. Cal. Dec. 1, 2011) (dismissing

15  slander of title claim where plaintiff made only boilerplate allegations of actual malice).

16       Dr. Amin next asserts, on the one hand, that the Challenged Tweet "contained statements

17  that contradicted known facts," Compl. ¶ 98; *id.* ¶ 55 (same), and that Winslow "had actual

18  knowledge that the accusations against Dr. Amin were false," *id.* ¶ 99 (again, "[o]n information

19  and belief"), while also contending, on the other hand, that Winslow did *not* have such knowledge

20  because he had "purposely *avoided* the truth and ignored evidence establishing the falsity of the

21  Challenged Tweet," *id.* ¶ 95 (emphasis added).  Either way, Dr. Amin does not identify what facts

22  Winslow supposedly knew and how he knew them or what facts were available to him that he

23

---

24  [11] *See, e.g.*, *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 57-58 (1st Cir. 2012);
    *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015); *McCafferty v. Newsweek Media Grp.*, 955
25  F.3d 352, 360 (3d Cir. 2020); *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012);
    *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 745 (5th Cir. 2019); *Ryniewicz v. Clarivate*
26  *Analytics*, 803 F. App'x 858, 868 (6th Cir. 2020) (defamation plaintiff failed to make plausible
    allegation of actual malice necessary to overcome state-law qualified privilege); *Pippen v.*
27  *NBCUniversal Media*, 734 F.3d 610, 614 (7th Cir. 2013); *Nelson Auto Ctr. v. Multimedia*
    *Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020); *Turner v. Wells*, 879 F.3d 1254 (11th Cir.
28  2018); *Tah v. Global Witness Publ'g, Inc.*, 991 F.3d 231, 239-40 (D.C. Cir. 2021), *cert. denied*,
    142 S. Ct. 427 (2021).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1   supposedly ignored.  As a matter of law, alleging that defendant "'knowingly and recklessly'

2   ignored or deliberately avoided learning information" without "setting forth facts demonstrating

3   that [defendant] acted in these ways" does "not allege sufficient relevant facts to support a claim

4   of actual malice." *Turner*, 879 F.3d at 1273.

5        Dr. Amin also contends that the Challenged Tweet "contained statements" that were "so

6   inherently improbable" or "so outrageous on their face as to raise serious doubts about their truth,"

7   Compl. ¶¶ 96-97, but again does not explain how.  His omission is particularly glaring in

8   circumstances where various officials had already publicly asserted that the allegations of the

9   Whistleblower Complaint were sufficiently credible and serious to warrant launching multiple

10  official investigations.  *See, e.g.*, *Schatz*, 669 F.3d at 56-58 (affirming dismissal where plaintiff

11  pleaded "actual-malice buzzwords" but the alleged facts and news reports upon which challenged

12  report was based, which could be the subject of judicial notice, showed absence of actual malice).

13       Finally, Dr. Amin alleges, again "[o]n information and belief," that Winslow "published"

14  the Challenged Tweet "without conducting a reasonable investigation."  Compl. ¶ 102.

15  Elsewhere, dropping the "information and belief" qualifier, Dr. Amin alleges that Winslow

16  published "without any investigation" at all, *id.* ¶ 55, and complains that Winslow "never spoke to

17  him about the contents" of the Challenged Tweet, *id.* ¶ 56, as if that were somehow required

18  before sending a tweet.  These allegations do not constitute actual malice as a matter of law

19  because a "failure to investigate before publishing, even when a reasonably prudent person would

20  have done so, is not sufficient to establish reckless disregard."  *Connaughton*, 491 U.S. at 688; *see*

21  *also, e.g.*, *St. Amant*, 390 U.S. at 731 ("[R]eckless conduct is not measured by whether a

22  reasonably prudent man would have published or would have investigated before publishing.").

23       In fact, Winslow's tweet thread actually *negates* a finding of actual malice, because it

24  confirms that he relied exclusively on newspaper reports in reputable publications.  *See Schatz*,

25  669 F.3d at 57-58 (no plausible claim of actual malice where challenged statement was based on

26  previously published newspaper reports); *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287,

27  1297 (D.C. Cir. 1988) ("good faith reliance on previously published news reports in reputable"

28  publications "precludes a finding of actual malice as a matter of law").  Because Dr. Amin's

1 complaint is devoid of *facts* that would, if proven, be clear and convincing evidence of actual

2 malice, and the circumstances *negate* a such a finding, he has failed to state a claim and cannot

3 establish a probability of prevailing.  His complaint should be stricken for this reason as well.

4       **D.**     **Dr. Amin's Case Should Be Dismissed With Prejudice.**

5       Dr. Amin's case should be dismissed with prejudice because any effort to amend his

6 Complaint would be futile.  Here, amendment would not save his claims because the Challenged

7 Tweet is protected as opinion/rhetorical hyperbole/fair comment as a matter of law, its underlying

8 premise is absolutely privileged under Section 47(d), and Dr. Amin cannot establish actual malice,

9 including because Winslow relied on reports in multiple reputable publications.  *See, e.g.*, *Herring*

10 *Networks, Inc.*, 8 F.4th at 1161 (affirming order granting anti-SLAPP motion and dismissing case

11 with prejudice, because "amendment would have been futile" where challenged statement was

12 protected expression of opinion); *Clifford v. Trump*, 818 F. App'x 746, 751 (9th Cir. 2020)

13 (district court properly granted anti-SLAPP motion and denied "leave to amend the complaint"

14 where "[a]mendment would have been futile because the tweet is not defamatory as a matter of

15 law").  Such a result is entirely consistent with the purposes of the anti-SLAPP statute, which is

16 intended to provide defendants like Winslow with an efficient and expeditious end to meritless

17 defamation claims.  Because any amendment would be futile, Dr. Amin's Complaint should be

18 dismissed with prejudice.

19 **IV.**    **CONCLUSION**

20       For all the foregoing reasons, the Court should grant Defendant's anti-SLAPP motion and

21 dismiss Dr. Amin's Complaint, without leave to amend, and award Winslow his attorneys' fees

22 and costs in defending against this baseless lawsuit.

23

24 DATED:  December 21, 2021

25

26

27

28

                      Seth D. Berlin (*Pro Hac Vice* Pending)
                      Robert S. Gutierrez
                      Omarr K. Rambert
                      **BALLARD SPAHR LLP**

                      By:   */s/ Robert S. Gutierrez*

                      Attorneys for Defendant Don Winslow

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

**DEFENDANT DON WINSLOW'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S
COMPLAINT PURSUANT TO C.C.P. § 425.16**