WYNTER L. DEAGLE, Cal. Bar No. 296501
ANNE-MARIE D. DAO, Cal. Bar No. 282632
YARAZEL MEJORADO, Cal. Bar No. 322681
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:  858.720.8900
E-mail:  wdeagle@sheppardmullin.com

STACEY GODFREY EVANS (*pro hac vice*)
TIFFANY N. WATKINS (*pro hac vice*)
JOHN AMBLE JOHNSON (*pro hac vice*)
4200 Northside Pkwy NW, Bldg One, Suite 200
Atlanta, GA 30327
Telephone:  770.779.9602
E-mail:  sevans@staceyevanslaw.com
          twatkins@staceyevanslaw.com
          ajohnson@staceyevanslaw.com

SCOTT R. GRUBMAN (*pro hac vice*)
1834 Independence Square
Atlanta, GA 30338
Telephone:  404.233.4171
 E-mail:  sgrubman@cglawfirm.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., <br><br> Plaintiff, <br><br> v. <br><br> DON WINSLOW, <br><br> Defendant. | Case No. 21cv01635 <br><br> Hon. M. James Lorenz <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16** <br><br> [No Oral Argument Unless Requested by Court] <br><br> Action Filed: September 17, 2021 |

**BRIEF STATEMENT OF ALL REASONS IN OPPOSITION TO MOTION TO STRIKE [L.R. 7.1(f)(3)(b)]**

Plaintiff, Dr. Mahendra Amin, hereby states the following reasons the Court should deny Defendant's Motion to Strike and Request for Judicial Notice (Docs. 10, 10-1):

1.  Defendant improperly attempts to submit documents not mentioned or central to the Complaint.

2.  The Complaint sufficiently pleads a claim for defamation; if factual evidence is considered, Dr. Amin must be allowed to conduct discovery and supplement the evidence.

    A.  Defendant's defamatory statements are not protected opinion, "rhetorical hyperbole," or fair comment.

    B.  Defendant's defamatory statements are not protected under the fair report privilege because they are not reports, they are not fair and true, they are not made in a public journal, and they do not concern any official proceeding.

    C.  Defendant's defamatory statements were made with actual malice, that is with knowledge of or reckless disregard toward the falsity of the statements, but Dr. Amin is not a public official who must allege such actual malice in any event.

3.  Although Defendant's motion should be denied, if the Court determines that the motion should be granted, Plaintiff should be given leave to amend.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................... 2

III.    LEGAL STANDARD .......................................................................... 3

IV.     LEGAL ARGUMENT .......................................................................... 5

    A.    The Court Should Deny Defendant's Motion For Judicial Notice, But If Granted, The Court Must Allow Discovery ................................ 5

    B.    Dr. Amin's Complaint Is Legally Sufficient ................................ 9

        1.    Defendant's defamatory statements are false statements of fact; they are not protected opinion, rhetorical hyperbole, or fair comment ................................................ 9

            a.    Defendant did not provide facts and then share commentary creating an opinion statement ...................... 10

            b.    No hyperbolic language negates the impression that Defendant was asserting a statement of fact ................... 11

            c.    Defendant's statements can be proven true or false ........ 12

        2.    The Fair Report Privilege Does Not Apply:  Defendant's defamatory statements are not privileged because they are not reports, are not fair and true, are not made in a public journal, and do not report on any official proceeding. .............. 15

        3.    Dr. Amin is not a public figure, but nevertheless has alleged that Defendant's defamatory statements were made with actual malice. ...................................................... 17

            a.    Dr. Amin adequately alleged actual malice .................... 17

            b.    Dr. Amin is not a "public official" ................................. 21

    C.    Leave To Amend ..................................................................... 24

V.      CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Argentieri v. Zuckerberg*
   8 Cal. App. 5th 768 (2017) ........................................................................ 15

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ........................................................................... 17, 18

*Barger v. Playboy Enters., Inc.*
   564 F. Supp. 1151 (N.D. Cal. 1983) .......................................................... 17

*Brocklesby v. United States*
   767 F.2d 1288 (9th Cir. 1985) .................................................................... 16

*Carver v. Bonds*
   135 Cal. App. 4th 328 (2005) ..................................................................... 16

*Cochran v. NYP Holdings, Inc.*
   58 F. Supp. 2d 1113 (C.D. Cal. 1998) ....................................................... 14

*Colt v. Freedom Commc'ns, Inc.*
   109 Cal. App. 4th 1551 (2003) ................................................................... 16

*Crane v. Ariz. Republic*
   972 F.2d 1511 (9th Cir. 1992) .............................................................. 15, 16

*Daniels-Hall v. Nat'l Educ. Ass'n*
   629 F.3d 992 (9th Cir. 2010) ........................................................................ 6

*Franklin v. Benevolent etc. Order of Elks*
   97 Cal. App. 3d 915 (1979) ........................................................................ 23

*Good Gov't Grp. of Seal Beach, Inc. v. Super. Ct.*
   22 Cal. 3d 672 (1978) ................................................................................. 12

*Green v. N. Pub. Co., Inc.*
   655 P.2d 736 (Alaska 1982) .................................................................. 23, 24

*Greenbelt Co-op. Pub. Ass'n v. Bresler*
   398 U.S. 6 (1970) .................................................................................. 13, 14

*Hannan v. Maxim Integrated Prods., Inc.*
  394 F. App'x 434 (9th Cir. 2010)............................................................4

*Harte-Hanks Commc'ns, Inc. v. Connaughton*
  491 U.S. 657 (1989) ............................................................................20

*Hartmann v. Cal. Dep't of Corr. & Rehab.*
  707 F.3d 1114 (9th Cir. 2013)............................................................5

*Hawran v. Hixson*
  209 Cal. App. 4th 256 (2012)......................................................15, 17

*Herring Networks, Inc. v. Maddow*
  8 F.4th 1148 (9th Cir. 2021).............................8, 9, 10, 11, 24, 25

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*
  140 Cal. App. 4th 515 (2006) ............................................................13

*James v. San Jose Mercury News, Inc.*
  17 Cal. App. 4th 1 (1993) ..................................................................24

*Kahn v. Bower*
  232 Cal. App. 3d 1599 (1991) ...........................................................23

*Khawar v. Globe Intern., Inc.*
  19 Cal. 4th 254 (1998) .......................................................................22

*Khoja v. Orexigen Therapeutics, Inc.*
  899 F.3d 988 (9th Cir. 2018) .........................................................6, 8

*Knievel v. ESPN*
  393 F.3d 1068 (9th Cir. 2005) .......................................................7, 8

*La Liberte v. Reid*
  966 F.3d 79 (2d Cir. 2020) ..................................................................3

*New York Times v. Sullivan*
  376 U.S. 254 (1964) ...........................................................................17

*Nocisa v. De Rooy*
  72 F. Supp. 2d 1093 (N.D. Cal. 1999)..............................................17

*Overhill Farms, Inc. v. Lopez*
  190 Cal. App. 4th 1248 (2010).....................................................13, 20

*Partington v. Bugliosi*
    56 F.3d 1147 (9th Cir. 1995) .......................................................... 14

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*
    946 F. Supp. 2d 957 (N.D. Cal. 2013)......................................... 11, 12

*Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*
    890 F.3d 828 (9th Cir. 2018)...............................3, 4, 5, 9, 21, 24, 25

*Reader's Digest Ass'n v. Super. Ct.*
    37 Cal. 3d 244 (1984) ................................................................... 19

*Rodriguez v. Panayiotou*
    314 F.3d 979 (9th Cir. 2002) .......................................................... 10

*Smith v. Copley Press, Inc.*
    140 Ill. App. 3d 613 (1986) ........................................................... 23

*Todd v. Lovecruft*
    Case No. 19-cv-01751-DMR, 2020 WL 60199, at *16-17
    (C.D. Cal. Aug. 13, 2021) ...................................................7, 8, 9, 24

*Unelko Corp. v. Rooney*
    912 F.2d 1049 (9th Cir. 1990) ........................................................ 11

*United States v. Sierra Pac. Indus., Inc.*
    862 F.3d 1157 (9th Cir. 2017) ........................................................ 16

*Verizon Del., Inc. v. Covad Commc'ns Co.*
    377 F.3d 1081 (9th Cir. 2004) ........................................................ 25

*Young v. CBS Broad., Inc.*
    212 Cal. App. 4th 551 (2012) .................................................... 22, 23

*Yow v. Nat'l Enquirer, Inc.*
    550 F. Supp. 2d 1179 (E.D. Cal. 2008) .............................................. 9

<u>Statutes</u>

Cal. Civ. Proc. Code § 47(d)............................................................ 15

Cal. Civ. Proc. Code § 425.16(b)(1)................................................. 3, 9

<u>Other Authorities</u>

Federal Rule of Civil Procedure 8 ............................................................................. 3

Federal Rule of Civil Procedure 8(a) ..................................................................... 18

Federal Rule of Civil Procedure 12 ................................................................. 3, 24

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 4, 5, 8

Federal Rule of Civil Procedure 15 ...................................................................... 24

Federal Rule of Civil Procedure 15(a)(2) ............................................................ 24

Federal Rule of Civil Procedure 56 ............................................................... 3, 4, 8

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION</u>

2

## I. INTRODUCTION

3      On September 19, 2020, Defendant, Don Winslow, a *New York Times*

4  bestselling author with a widely followed Twitter account, screamed to the world

5  that Plaintiff, Dr. Mahendra Amin, an immigrant and physician of over 35 years

6  who dedicated his career to the treatment of underserved communities, was a

7  criminal and an abusive, unethical, and dishonest physician:

8

9

10

11

12

13

14

15

16       

17

18

19

20

21

22

23

24

25      After striking quickly to vilify Dr. Amin in his statements ("the Publication"),

26  Defendant now seeks to strike Plaintiff's right to access justice through the court

27  system.  Defendant seeks to strike Dr. Amin's complaint as a matter of law under

28  California's "anti-SLAPP" statute, arguing that Dr. Amin's case cannot continue

unless he shows a probability of success even before a stitch of discovery.  That is not the law, and Dr. Amin can more than meet the burdens that may lie before him.

Defendant seeks the protection of the fair report privilege, but the statement was Defendant's alone; he did not quote any source for his false factual accusations, and he did not attach links to or reference any report or article, even if doing so would have possibly been a fair report, which it would not.  The entirety of Defendant's published statement is as set forth above, and it is untrue.

Defendant also tries to submit documents not mentioned in or central to the Complaint, to create a factual defense that is inappropriate at this stage of the proceedings.  Granting Defendant's request would expand the pleadings from a 16-page straightforward Complaint to over two dozen documents totaling over 300 pages.  Docs. 10-1 through 10-27.

Defendant argues that the extraneous material provides "context" for the Publication.  Doc. 10-1 at 2.  But Defendant did not grant Dr. Amin any such context when he made his Publication in a single Twitter post, which had to be 280 characters or less and did not link to or identify any other material, including any of the 26 "exhibits" Defendant asks the Court to consider.  Defendant's Publication must be evaluated as viewed by the reader.  But, whether or not the Court accepts Defendant's newly expanded version of the pleadings, the Court should deny Defendant's motion to strike.  Dr. Amin's Complaint sufficiently pleads a case of defamation, and that is all that is required.

## II.    FACTUAL BACKGROUND

Dr. Amin is an immigrant from India who worked hard to practice medicine in the United States, which he has done for over 35 years.  Doc. 1 ¶¶ 17-21.  For his entire career, he has aided underserved areas, including rural south Georgia, never turning away a patient for inability to pay.  *Id*. ¶¶ 22-30.  Part of Dr. Amin's medical practice was the treatment of patients at the Irwin County Detention Center (ICDC).  When he treated ICDC patients, Dr. Amin's work was under intense scrutiny from

1  the federal government with regard to need, payment, and oversight; and any

2  surgical procedure he proposed went through an independent review process and

3  required patient consent.  *Id*. ¶¶ 59-66.

4        On September 14, 2020, Project South sent a letter to the Department of

5  Homeland Security, the Immigration and Customs Enforcement (ICE) Atlanta Field

6  Office, and the ICDC, as well as the media (the "Letter").  *Id*. ¶¶ 42-48.  The Letter

7  mostly concerned COVID-19 conditions at the ICDC, but it also contained

8  allegations of high rates of hysterectomies at the ICDC; it did not identify Dr. Amin.

9  *Id*. ¶¶ 45-46.

10       On September 20, Defendant, a *New York Times* bestselling author with a

11 Twitter account with over 600,000 followers, published the Twitter post at issue in

12 this case.  *Id*. ¶¶ 37-41, 50.  Defendant called Dr. Amin a criminal and "the

13 BUTCHER" and stated that he "performed illegal hysterectomies on women at the

14 direction of Trump and @DHSgov," posting two photographs of Dr. Amin.  *Id*. ¶

15 50.  These defamatory statements did not identify or link to any news articles or the

16 Letter itself.  *Id*. ¶¶ 50, 53.  They permanently damaged Dr. Amin's personal and

17 professional reputation and subjected Dr. Amin to public hatred and ridicule.  *Id*. ¶¶

18 68-82.

19              **III.   LEGAL STANDARD**

20       California state law provides for a motion to strike wherein a cause of action

21 against a party "arising from any act of that person in furtherance of the person's

22 right of petition or free speech . . . in connection with a public issue shall be subject

23 to a special motion to strike, unless the court determines that the plaintiff has

24 established that there is a probability that the plaintiff will prevail on the claim."

25 Cal. Civ. Proc. Code § 425.16(b)(1).  The Ninth Circuit has observed that "[t]he

26 degree to which the anti-SLAPP provisions are consistent with the Federal Rules of

27 Civil Procedure has been hotly disputed."  *Planned Parenthood Fed. of Am., Inc. v.*

28 *Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018).  The Second, Fifth,

1  Eleventh, and D.C. Circuits have held that state anti-SLAPP statutes such as

2  California's conflict with Federal Rules of Civil Procedure 8, 12, and 56 and

3  therefore anti-SLAPP motions are entirely unavailable in a federal diversity case.  In

4  contrast, the First and Ninth Circuits have held that federal courts may hear such

5  motions with important limitations that prevent summary dismissal here.  *See La*

6  *Liberte v. Reid*, 966 F.3d 79, 86-87 (2d Cir. 2020) (summarizing circuit split and

7  holding that, in Second Circuit, federal courts may not consider motions to strike

8  pursuant to state anti-SLAPP statutes).

9      In the Ninth Circuit, a motion to strike under California's anti-SLAPP statute

10  is available in federal courts sitting in diversity, but only as altered to conform with

11  the Federal Rules of Civil Procedure.  "In order to prevent the collision of California

12  state procedural rules with federal procedural rules, [courts] review anti-SLAPP

13  motions to strike under different standards depending on the motion's basis."

14  *Planned Parenthood*, 890 F.3d at 833.  Where, as here, a motion to strike is "based

15  on legal deficiencies," courts treat the motion similarly to a motion to dismiss

16  pursuant to Federal Rule of Civil Procedure 12(b)(6), and the plaintiff is "not

17  required to present prima facie evidence supporting [his] claims."  *Id*.  Where an

18  anti-SLAPP motion challenges the "factual sufficiency" of a claim, on the other

19  hand, the motion for summary judgment standard of Federal Rule of Civil Procedure

20  56 applies, and "discovery must be allowed, with opportunities to supplement

21  evidence based on the factual challenges, before any decision is made by the court."

22  *Id*. at 834.

23      Because Defendant moves that Dr. Amin's complaint is legally deficient, it

24  must be evaluated on a motion to dismiss standard.  When ruling on a motion to

25  dismiss, courts must "accept all factual allegations in the complaint as true and

26  construe the pleadings in the light most favorable to the nonmoving party."  *Hannan*

27  *v. Maxim Integrated Prods., Inc.*, 394 F. App'x 434, 434 (9th Cir. 2010) (quoting

28  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).  "Dismissal under Rule

1   12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or

2   sufficient facts to support a cognizable theory." *Hartmann v. Cal. Dep't of Corr. &*

3   *Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quotation marks omitted).[1]

## IV.   LEGAL ARGUMENT

### A.   The Court Should Deny Defendant's Motion For Judicial Notice, But If Granted, The Court Must Allow Discovery

Defendant urges the Court to take judicial notice and rely on a plethora of extraneous documents to grant Defendant's motion to strike.  Docs. 10, 10-1 through 10-27.  Defendant argues that the documents are introduced "for the purpose of establishing that Plaintiff's claims arise from speech and conduct in furtherance of speech 'in connection with a public issue or an issue of public interest,' and providing context for this lawsuit and, in particular, a tweet posted by [Defendant] that forms the basis for this action."  Doc. 10-1 at 2.  This is an improper use of judicial notice and incorporation by reference.

Because Defendant argues that the Complaint is legally insufficient, Doc. 10 at 10, the Court's consideration of the Motion to Strike is limited to whether Dr. Amin has stated a claim for which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and Dr. Amin is "not required to present prima facie evidence supporting [his] claims." *Planned Parenthood*, 890 F.3d at 833.  Forcing a plaintiff to present evidence at the pleading stage is inconsistent with the Federal Rules of Civil Procedure.  Before the Court may consider the factual sufficiency of a claim, "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges." *Id*. at 834.

---

[1] Dr. Amin recognizes that the law of the Ninth Circuit binds the Court to consider a motion to strike pursuant to the California anti-SLAPP statute.  However, this Ninth Circuit precedent is wrong because, as held by multiple other circuits, anti-SLAPP statutes conflict with the Federal Rules of Civil Procedure.  Accordingly, this precedent should be reversed.

1    Under the incorporation by reference and judicial notice doctrines, documents

2   that are central to the complaint and reliably authentic should be treated as part of

3   the complaint for purposes of a 12(b)(6) motion.  But only in "rare instances" does

4   assessing the sufficiency of a claim require that the document at issue be reviewed,

5   and incorporation by reference is intended to "prevent[] plaintiffs from selecting

6   only portions of documents that support their claims, while omitting portions of

7   those very documents that weaken—or doom—their claims."  *See Khoja v.*

8   *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citation omitted).

9   In the Ninth Circuit, "a court may consider evidence on which the complaint

10   necessarily relies if: (1) the complaint refers to the document; (2) the document is

11   central to the plaintiff's claim; and (3) no party questions the authenticity of the

12   copy attached to the 12(b)(6) motion."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d

13   992, 998 (9th Cir. 2010) (quotation marks and citation omitted).

14    The Court should not consider the documents offered by Defendant because,

15   aside from "Exhibit J," Doc. 10-12 (the Publication, which is already part of the

16   Complaint, Doc. 1 ¶ 50), the documents are not evidence on which the complaint

17   "necessarily relies."  Defendant attempts to rely on a letter, which he characterizes

18   as a "whistleblower complaint," multiple articles and press releases, and three other

19   Twitter posts, totaling over 300 pages.  *See generally* Docs. 10, 10-1 through 10-27.

20   These documents do not provide "context" for the Publication.  Doc. 10-1 at 2.

21   They are completely independent from the statement.  Although the Complaint does

22   refer to the Letter penned on behalf of Dawn Wooten, who labels herself a

23   "whistleblower," Doc. 10-3, the Complaint does not "necessarily rely on" it.

24   Indeed, the Publication did not reference or discuss the Letter at all, and the Letter

25   does not identify Dr. Amin.  The other documents are even further removed from

26   the Complaint's allegations.

27    Courts must evaluate statements as readers see or access them.  For example,

28   as courts in this circuit have held, each Twitter post stands on its own; courts cannot

1    assume that a reader also read posts before or after any particular post when they are

2    not linked together.

3         Thus, the Court should not consider the other separate Twitter posts that the

4    Defendant asks this Court to review.  The court in *Todd v. Lovecruft*, ruled that a

5    first Twitter post should not be considered for purposes of determining whether the

6    second Twitter post should be ruled defamatory *per se* as a matter of law on the

7    defendant's California anti-SLAPP factual challenge.  Case No. 19-cv-01751-DMR,

8    2020 WL 60199, at *16-17 (C.D. Cal. Aug. 13, 2021).  There, as here, the

9    statements were "separate tweets and not part of the same thread," the second post

10   did "not retweet or explicitly reference" the first, and the "temporal proximity of the

11   tweets would not be obvious to an average user unless they specifically looked at

12   [the defendant]'s Twitter page," but Twitter users "would ordinarily read the tweets

13   as part of their own feed."  Thus, the second Twitter post in *Lovecraft* could not

14   constitute defamation *per se*, and instead whether a defamatory meaning had been

15   conveyed was a matter for the jury, not the court.  *Id*.  On the other hand, as to a

16   different alleged defamatory statement in that case, the court ruled that where one

17   Twitter post was attached to another post as an answer to it such that "the two tweets

18   would ordinarily be read together," the court would consider both posts together and

19   concluded that the complete statement created a prima facie case of defamation *per*

20   *se*.  *Id*. at *17; *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (other

21   communications should be evaluated *if* a reader must have encountered them when

22   reviewing alleged defamatory statements).

23         In this case, persons who encountered the Publication would not see any of

24   the other documents that Defendant attempts to submit, unless they separately

25   sought them out.  They would only see the post itself, showing two photographs of

26   Dr. Amin and stating as a fact and without attribution to any other source that Dr.

27   Amin was a "BUTCHER" who "performed illegal hysterectomies on women at the

28   direction of Trump and @DHSgov," and was guilty of a "HORRIFIC CRIME."

1    Indeed, in most instances, even diligent searching of Defendant's other posts would
2    not have yielded the documents.  The Publication does not link to or discuss any
3    report or article, and it is not threaded with any other Twitter post.  The extra
4    material, similar to the first post in *Lovecruft* and in contrast to the linked tweets in
5    *Lovecruft* and material in *Knievel*, is simply not pertinent to whether the Complaint
6    is legally sufficient.

7            Further, to the extent that such material does constitute evidence of the
8    context of Defendant's statement, Defendant does not attempt to bring into the
9    Court's consideration documents on which the Complaint "necessarily relies" or to
10   which the Complaint "refers only to portions that are helpful."  Instead, he creates a
11   factual defense that is not appropriate at this stage of the proceedings.  *See Khoja*,
12   899 F.3d at 1002 (9th Cir. 2018) ("However, if the document merely creates a
13   defense to the well-pled allegations in the complaint, then that document did not
14   necessarily form the basis of the complaint."); *see also Herring Networks, Inc. v.*
15   *Maddow*, 8 F.4th 1148, 1154-55 (9th Cir. 2021) (affirming lower court's
16   consideration of complaint and article and segment of television show that were
17   "referred to extensively in the complaint" while excluding transcripts from
18   defendant's other television shows, other articles and television shows, and expert
19   report in considering motion to strike, because party seeking consideration of
20   extraneous documents was "attempting to blur these two categories by implanting
21   procedural requirements of Rule 56 into Rule 12(b)(6) analysis").  The Ninth Circuit
22   has warned against this exact use of incorporation by reference:

23           Submitting documents not mentioned in the complaint to
             create a defense is nothing more than another way of
24           disputing the factual allegations in the complaint, but with
             a perverse added benefit: unless the district court converts
25           the defendant's motion to dismiss into a motion for
             summary judgment, the plaintiff receives no opportunity
26           to respond to the defendant's new version of the facts.

27   *Khoja*, 899 F.3d at 1003 (9th Cir. 2018).

28

1   Accordingly, the factual material Defendant attaches to his motion to strike
2   should not be considered, and if the documents are considered, Dr. Amin should
3   have the opportunity to conduct discovery and supplement the evidence based on
4   Defendant's factual challenges.  *See Planned Parenthood*, 890 F.3d at 834.

5   **B.   Dr. Amin's Complaint Is Legally Sufficient**

6   If the Court determines that Defendant's Publication constitutes an act in
7   furtherance of Defendant's right of petition or free speech in connection with a
8   public issue, Defendant's motion should still be denied, because Dr. Amin's
9   Complaint states a claim for which relief may be granted.  Cal. Civ. Pro. Code §
10  425.16(b)(1); *Planned Parenthood*, 890 F.3d at 833.

11  Under California law, defamation is "the intentional publication of a
12  statement of fact which is false, unprivileged, and has a natural tendency to injure or
13  which causes special damages." *Lovecruft*, 2020 WL 60199 at *15 (quotation marks
14  and citation omitted).  "An allegation the plaintiff is guilty of a crime is libelous on
15  its face." *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1183 (E.D. Cal. 2008)
16  (citations omitted).

17  Defendant claims Dr. Amin's Complaint is legally deficient because (1) the
18  defamatory statements are not false statements of fact but instead protected opinion,
19  rhetorical hyperbole, and/or fair comment; (2) Defendant enjoys a fair report
20  privilege on the statements; and (3) Dr. Amin is a public figure and therefore must
21  allege malice but has not done so.  These contentions are wrong.

22  **1.   Defendant's defamatory statements are false statements of fact;**
23  **they are not protected opinion, rhetorical hyperbole, or fair**
24  **comment.**

25  Defamation "involves the intentional publication of a statement of fact which
26  is false, unprivileged, and has a natural tendency to injure or which causes special
27  damage." *Maddow*, 8 F.4th at 1157 (quotation marks and citation omitted).  Ninth
28  Circuit courts applying California law use the "totality of the circumstances" test to

1  resolve the "threshold question" of whether a reasonable factfinder could conclude

2  that the statement implies an assertion of objective fact as opposed to protected

3  opinion, rhetorical hyperbole, or fair comment: "(1) whether the general tenor of the

4  entire work negates the impression that the defendant was asserting an objective

5  fact, (2) whether the defendant used figurative or hyperbolic language that negates

6  that impression, and (3) whether the statement in question is susceptible of being

7  proved true or false."  *Id*. (quotation marks and citations omitted).

8         If the Court concludes that a statement "could reasonably be construed as

9  either fact *or* opinion, the issue should be resolved by a jury" as an issue of fact, and

10  not by the Court as a matter of law.  *Rodriguez v. Panayiotou*, 314 F.3d 979, 985-86

11  (9th Cir. 2002) (emphasis supplied) (citation omitted).  Here, the general tenor does

12  not negate the impression that Defendant was asserting an objective fact,

13  Defendant's use of the term "the BUTCHER" does not negate that impression but

14  rather supports it, and the statements in question are plainly susceptible of being

15  proved true or false.

16              **a.    Defendant did not provide facts and then share commentary**

17                     **creating an opinion statement**

18         The general tenor of the Publication does not provide a basis for finding that

19  the Publication is protected opinion.  The "general tenor of the entire work"

20  encompasses the medium through which the contested statement is made, the tone

21  of the speaker while giving the statement, and whether the speaker "fairly described

22  the general events involved" then "offered her personal perspective about some of

23  its ambiguities."  *Maddow*, 8 F.4th at 1157-59 (quotation marks and citation omitted

24  and some punctuation altered).

25         In *Maddow*, the statement "literally is paid Russian propaganda" was read in

26  the context of a television segment in which the host, with a tone of "gleeful

27  astonishment," shared a screenshot of an article and accurately summarized its

28  reporting.  The Ninth Circuit concluded that "a reasonable viewer would be able to

1   differentiate between [the] commentary and the actual news she is reporting," which
2   was not false and demeaning.  *Id*.  The court in *Maddow* contrasted another case,
3   *Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990), where the defendant
4   appeared in a television segment discussing junk he received in the mail.  Although
5   the tenor of the segment was "humorous," that humor "was derived from the fact of"
6   what the defendant said, so the statements "received no protection based on the
7   overall tenor of the segment."  *Id*. at 1158 (citing *Rooney*, 912 F.2d at 1050-54)
8   (punctuation altered).

9       Here, the Publication is like *Rooney*, not *Maddow*.  Defendant did not
10  accurately summarize another source so that a reader would differentiate
11  commentary from the facts that he was relaying, and accordingly his statement
12  should "receive[] no protection based on the overall tenor of the segment."  *Id*.
13  Even if the Court construed the Defendant's statement as an opinion (which it
14  should not), it is not a protected opinion under the law because Defendant included
15  no information on which a reader could evaluate the veracity of his "opinion."
16  "Although statements of opinion are not *per se* actionable, an opinion loses its
17  constitutional protection and becomes actionable when it is 'based on implied,
18  undisclosed facts' and 'the speaker has no factual basis for the opinion.'"  *Piping
19  Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 972 (N.D.
20  Cal. 2013) (quoting *Ruiz v. Harbor View Cmty. Ass'n*, 134 Cal. App. 4th 1456, 1471
21  (2005)).  Defendant did not relay that someone had alleged Dr. Amin performed
22  illegal hysterectomies and then offer his reflections.  He stated the accusations as
23  fact, without sharing any additional material or context.

**b.   No hyperbolic language negates the impression that
Defendant was asserting a statement of fact**

26      Further, Defendant's arguable use of hyperbolic language does not negate the
27  impression that he was asserting a statement of fact.  A defamatory statement does
28  not become non-actionable merely because it is accompanied by a statement of

1   hyperbole when the hyperbole is based on the false statement.  *See Piping Rock*

2   *Partners*, 946 F. Supp. 2d at 971 ("While these are the sorts of exaggerations and

3   hyperbole courts routinely consider opinion, here the entire basis of the opinion is

4   that [defendant] entered into a transaction with plaintiffs, and that the outcome was

5   unsatisfactory.").  Here, Defendant alleged that Dr. Amin is a criminal who

6   "performed illegal hysterectomies."  Defendant's arguably hyperbolic statements,

7   such as that Dr. Amin is a "the BUTCHER" guilty of a "HORRIFIC CRIME,"

8   plainly arise from the post's false factual assertions.  Rather than negating the

9   reader's impression that Defendant was asserting statements of fact, these

10  hyperbolic statements instead reinforce that impression, especially because of the

11  reasonable comparison of a doctor with a surgical scalpel to a butcher with a carving

12  knife.

13              **c.      Defendant's statements can be proven true or false**

14        Finally, the third factor, "whether the statement in question is susceptible of

15  being proved true or false," also weighs against Defendant's argument.  For

16  example, whether a person "performed illegal hysterectomies" is not something on

17  which reasonable minds may disagree; either it happened or it did not happen.

18        Defendant cites to a glut of cases, the thrust of which merely emphasizes that

19  defamatory statements must be built on false and demeaning statements of fact.

20  Doc. 10 at 21-26.  More than once, Defendant simply misstates the ruling or holding

21  of a court.  For example, Defendant quotes *Good Gov't Grp. of Seal Beach, Inc. v.*

22  *Super. Ct.*, 22 Cal. 3d 672, 698 (1978), without acknowledging that its quotation is

23  taken from a dissenting opinion.  Doc. 10 at 22.  In *Good Gov't Grp.*, the California

24  Supreme Court in fact upheld the lower court's denial of the defendant's motion for

25  summary judgment, holding that in the context of that case, whether the statement

26  was fact or opinion was ambiguous and therefore could not be determined as a

27  matter of law and was instead a proper question for a jury.  22 Cal. 3d at 682.

28

1    Defendant also cites *Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140
2  Cal. App. 4th 515, 528 (2006), for the following parenthetical: "statement 'that
3  Jones "must be an alcoholic,"' even though it otherwise appears factual, was a
4  protected expression of author's conclusion based on disclosed facts."  Doc. 10 at
5  25.  That is not what the court in *Integrated Healthcare* says.  Rather, the opinion
6  cites a previous case that discussed a hypothetical defendant who opined that Jones
7  is an alcoholic, and the court concluded not that the statement "was a protected
8  expression" but rather that the—again hypothetical—statement would be actionable
9  "only if the stated facts themselves are false and demeaning."  140 Cal. App. 4th at
10  528 (citations omitted).  Thus, opinions that are ***not based*** on false and demeaning
11  facts would be protected expression.

12    But as discussed above, even if phrases such as "the BUTCHER" and
13  "HORRIBLE CRIME" were understood as hyperbole or opinions, they ***are based*** on
14  Defendant's false and demeaning factual assertion that Dr. Amin performed illegal
15  hysterectomies and are therefore not protected expression.  For example, in *Overhill*
16  *Farms, Inc. v. Lopez*, the court ruled that, although "general statements charging a
17  person with being racist" can "constitute mere name calling," when the defendants
18  did not merely accuse the plaintiff of being racist "in some abstract sense" but
19  instead supported its characterization with specific factual accusations, the statement
20  was "not merely a hyperbolic characterization" but instead was "an accusation of
21  concrete, wrongful conduct."  190 Cal. App. 4th 1248, 1262 (2010).

22    Defendant points to no case in which false statements of fact such as those at
23  issue here were non-actionable.  Considered in full, the cases Defendant cites
24  demonstrate how distinguishable those cases are.  The Publication is not an instance
25  of a speaker relaying others' use of the term "blackmail" to characterize allegedly
26  unsavory business dealings that the speaker otherwise accurately described, as in
27  *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 7-8, 13-14 (1970).  Doc. 10 at
28  23.  It is not an instance of an opinion newspaper column describing a lawyer as

1   "dazzl[ing] a Los Angeles jury into buying his fantasy tale of a citywide police
2   conspiracy," when the speaker disclosed the facts that were the basis of the opinion
3   and those facts were not alleged to be defamatory, as in *Cochran v. NYP Holdings,*
4   *Inc.*, 58 F. Supp. 2d 1113, 1122 (C.D. Cal. 1998). *Id*. And it is not an instance of a
5   speaker's book and docudrama "merely outlin[ing] a set of facts, allowing the reader
6   to draw his own conclusion about them," as in *Partington v. Bugliosi*, 56 F.3d 1147,
7   1156 (9th Cir. 1995). *Id.* at 24. In contrast, here, even granting Defendant's
8   construction of his "conclusion," "that he believed the allegations . . . and then
9   condemning the conduct at issue," Doc. 10 at 23, the fact upon which that
10   conclusion was based—that Dr. Amin "performed illegal hysterectomies"—are
11   themselves defamatory.

12       Defendant also attaches numerous documents, including articles from public
13   journals and several other Twitter posts in his Request for Judicial Notice. Docs.
14   10-1 through 10-27. As discussed above, the Court should not consider these
15   extraneous documents because they are not part of the Publication or the Complaint
16   and constitute a factual defense not appropriate for this stage of the proceedings.
17   But even if those public journal articles were appropriate for consideration (which
18   they are not) and appeared in closer proximity to Defendant's post (which they did
19   not), statements like, "This man performed illegal hysterectomies on women at the
20   direction of Trump and @DHS.gov," are simply false statements of fact, including
21   in a broader context of Defendant's other Twitter posts and even the other articles
22   and documents. Dr. Amin has alleged that these facts are false, Doc. 1 ¶¶ 6-8, and
23   therefore the Complaint is legally sufficient.

24       Indeed, Defendant's post, recklessly parroting unsubstantiated allegations as
25   though they were true and proven fact, stands in stark contrast to the articles in
26   public journals that he cites, since those articles report the allegations against Dr.
27   Amin as disputed allegations and often decline to identify him altogether. *See, e.g.*,
28   Docs. 10-5 at 4, 10-9 at 4, 10-23 at 3, 10-25 at 7. Furthermore, the so-called

1  "whistleblower complaint" itself does not identify Dr. Amin.  *See generally* Doc.

2  10-3.  And Defendant included photographs of Dr. Amin, unlike any of the articles

3  Defendant asks this Court to consider, intensifying the harm.  Defendant accused

4  Dr. Amin of specific conduct capable of being proven false.

5      **2.    The Fair Report Privilege Does Not Apply:  Defendant's**

6          **defamatory statements are not privileged because they are not**

7          **reports, are not fair and true, are not made in a public journal, and**

8          **do not report on any official proceeding.**

9      Defendant's contention that the fair report privilege should apply to the

10 Publication is ridiculous.  For the privilege to apply, the Publication must be a "fair

11 and true report" in or to a "public journal" of "(A) a judicial, (B) legislative, or (C)

12 other public official proceeding, or (D) of anything said in the course thereof, or (E)

13 of a verified charge of complaint made by any person to a public official, upon

14 which complaint a warrant has been issued."  Cal. Civ. Proc. Code § 47(d).

15 Defendant must prove that the privilege applies.  *Hawran v. Hixson*, 209 Cal. App.

16 4th 256, 278 (2012) (citation omitted).  The Publication is none of these things.

17     Defendant's defamatory statements are also not "fair and true."  "To be 'fair

18 and true,' the report must capture the substance, the gist or sting, of the subject

19 proceedings as measured by considering the natural and probable effect of the report

20 on the mind of the average reader."  *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768,

21 787 (2017) (citations and some quotation marks and punctuation omitted); *see also*

22 *Crane v. Ariz. Republic*, 972 F.2d 1511, 1519 (9th Cir. 1992) (holding same).

23     Defendant's statements are false, and they do not accurately reflect any of the

24 articles or documents that Defendant asks the Court to consider.  The gravamen of

25 the so-called "whistleblower complaint," the document that Defendant alleges is the

26 source of the "official proceeding," is the alleged mismanagement of the private

27 prison company that operated the ICDC, primarily regarding detained immigrants'

28 exposure to COVID-19, not alleged criminal activity of Dr. Amin.  *See* Doc. 10-3 at

-15-

1  2-3.  Indeed, the document **does not even mention Dr. Amin's name**.  *See generally*

2  *id*.  Defendant's post, unlike news articles and other documents Defendant asks this

3  Court to consider, identifies Dr. Amin by name and photograph and states as fact the

4  assertion that Dr. Amin "performed illegal hysterectomies on women" and is

5  accordingly "the BUTCHER."  Doc. 1 ¶ 50.  Unlike news articles and other

6  documents Defendant asks this Court to consider, *e.g.* Docs. 10-5 at 4, 10-9 at 4, 10-

7  23 at 3, 10-25 at 7, the Publication did not report the allegations as disputed

8  allegations.

9       The defamatory statements are also not made in a "public journal."  *See*

10 *Brocklesby v. United States*, 767 F.2d 1288, 1298 (9th Cir. 1985) (holding that

11 navigational approach charts are not "public journals" for purposes of California's

12 privilege law and therefore the privilege does not apply).  Defendant states: "First,

13 Twitter is a mass media platform that easily qualifies as a 'public journal.'"  Doc. 10

14 at 27.  Defendant cites two cases, without any additional argument, to support this

15 proposition: *Carver v. Bonds*, 135 Cal. App. 4th 328, 351 (2005) and *United States*

16 *v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1174 (9th Cir. 2017).  *Id*.  Neither of

17 these cases comes close to defining Twitter as a "public journal."

18      In *Carver*, the privilege was sought by a newspaper and its website, 135 Cal.

19 App. 4th at 351, and *Sierra Pacific* concerned a discussion of whether a judge's

20 following the United States Attorney's Office on Twitter constituted an appearance

21 of bias for which the judge should have recused, 862 F.3d at 1174.  The newspaper

22 in *Carver* was the kind of public journal the privilege is meant to protect.  *See, e.g.*,

23 *Colt v. Freedom Commc'ns, Inc.*, 109 Cal. App. 4th 1551, 1558 (2003) (discussing

24 "newspaper report" and "news article" in discussing the privilege) (citations

25 omitted); *Crane*, 972 F.2d at 1519 (same).  Twitter, in contrast, is a forum for the

26 broad exchange of ideas, and posts are not vetted by journalistic effort.

27      Finally, the Publication is not a report "of" any proceeding.  Doc. 1 at ¶ 50.

28 Defendant posted the defamatory statements without identifying or linking to

anything.  A Twitter user would encounter the post by itself, and it is by that standard that the Court should consider the statement.  But even considering the extrinsic material Defendant requests, the Publication is not a report "of" any "official proceeding" because it does not say anything about the so-called "whistleblower complaint" or any proceeding that relates to Dr. Amin.  *See Hawran*, 209 Cal. App. 4th at 280 (holding that a press release was not a report "of" an SEC investigation, even though there was an SEC investigation happening, when the "report" did not mention the official proceeding, "much less capture its substance, gist or sting," because it therefore did not actually "report on, summarize or describe" the proceeding).  Indeed, nothing in the Publication even discusses any official proceedings that focus on Dr. Amin.  Defendant has not met his burden of proving the privilege's applicability.

> **3.     Dr. Amin is not a public figure, but nevertheless has alleged that Defendant's defamatory statements were made with actual malice.**
>
> **a.     Dr. Amin adequately alleged actual malice**

To ultimately prevail in a defamation case, a plaintiff who is a "public official" must show with "convincing clarity" that the defendant made the defamatory statement with "knowledge that it was false or with reckless disregard of whether it was false or not," a state of mind known as "actual malice."  *New York Times v. Sullivan*, 376 U.S. 254, 279-80, 285-86 (1964).  As Defendant acknowledges, the Ninth Circuit has not held that a defamation suit may be dismissed on a motion to dismiss for failing to plead actual malice.  Doc. 10 at 30-31.  Defendant cites a district court case that required "a heightened pleading standard for malice," *Nocisa v. De Rooy*, 72 F. Supp. 2d 1093, 1108 (N.D. Cal. 1999) (describing *Barger v. Playboy Enters., Inc.*, 564 F. Supp. 1151, 1156 (N.D. Cal. 1983)).  Doc. 10 at 31.  But that case was decided before *Ashcroft v. Iqbal*, which stated as follows in holding that a complaint that only alleged "discriminatory intent . . . with a conclusory allegation" could not survive a motion to dismiss:

1

2

3

4

5

6

7

8

9

10

11

12

13

> In the context of [Federal] Rule [of Civil Procedure] 9, it is to be compared to the particularity requirement applicable to fraud or mistake.  Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid—though still operative—strictures of Rule 8.  *See* 5A C. Wright & A. Miller, Federal Practice and Procedure § 1301, p. 291 (3d ed. 2004) ("[A] rigid rule requiring the detailed pleading of a condition of mind would be undesirable because, absent overriding considerations pressing for a specificity requirement, as in the case of averments of fraud or mistake, the general 'short and plain statement of the claim' mandate in Rule 8(a) . . . should control the second sentence of Rule 9(b).").  And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.

14   556 U.S. 662, 686-87 (2009).  Accordingly, the Court should consider the

15   sufficiency of the Complaint according to Federal Rule of Civil Procedure 8(a)'s

16   requirement of a "short and plain statement of the claim showing that the pleader is

17   entitled to relief," as well as *Iqbal*'s holding that a complaint must merely allege

18   "factual content that allows the court to draw the reasonable inference that the

19   defendant is liable for the misconduct alleged."  *Id*. at 678 (citation omitted).

20   Regardless of the exact standard, the Complaint pleads facts that give rise to a

21   reasonable inference of actual malice so that even if Dr. Amin were a "public

22   figure," which as discussed below he is not, the Complaint is sufficient.  Defendant

23   quotes fragments of the Complaint and argues that the Complaint "is devoid of facts

24   that would, if proven, be clear and convincing evidence of actual malice."  Doc. 10

25   at 32-33 (emphasis omitted).  That is not accurate.

26   The Complaint alleges that five days before the Publication, it was revealed

27   that the allegations against Dr. Amin "were not based on first-hand accounts" and

28   that the detention center "confirmed that Dr. Amin had performed only two

1  hysterectomies on . . . patients;" and it alleges that Defendant nevertheless falsely

2  called Dr. Amin "the BUTCHER" and alleged that he "performed illegal

3  hysterectomies," without providing context such as stating that Defendant was

4  sharing or reflecting upon others' allegations.  Doc. 1 ¶¶ 49-50.

5          The Complaint further alleges that Defendant "knowingly and purposely

6  avoided the truth and ignored evidence establishing the falsity" of his statements,

7  that the statements were "false and discredited" and "contained statements that

8  contradicted known facts," and that Defendant "had actual knowledge that the

9  accusations against Dr. Amin were false prior to publication." *Id*. ¶¶ 6, 95, 98-99.

10  It alleges that Defendant made these defamatory statements "without conducting a

11  reasonable investigation" even "in the face of contradictory information already

12  known at the time," that the Publication "did not reference or include links to any

13  news stories," and that Defendant "was not interested in the truth; he was interested

14  in creating buzz and attracting followers so he could sell more books." *Id*. ¶¶ 53,

15  55, 57, 102.

16          Moreover, the Complaint alleges that because of federal requirements for pre-

17  approval for healthcare treatment of detainees, it "is beyond reasonable belief that

18  detainees in an ICE facility . . . could undergo surprise hysterectomies without

19  consultation and consent," Defendant's statement "contained statements that were so

20  inherently improbable on their face" and "so outrageous on their face as to raise

21  serious doubts about their truth." *Id*. ¶¶ 58, 96-97.  Circumstantial evidence may

22  also be used to prove actual malice, and indicia of recklessness include "when the

23  publisher's allegations are so inherently improbable that only a reckless man would

24  have put them in circulation" and "where there are obvious reasons to doubt the

25  veracity of the informant or the accuracy of his reports," such as when, according to

26  the Complaint, Defendant shared contested allegations of extreme and dubious

27  criminal acts as undisputed fact. *Reader's Digest Ass'n v. Super. Ct.*, 37 Cal. 3d

28

-19-

244, 257 (1984) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)); Doc. 1 ¶¶ 50, 58, 96-99.

These alleged facts give rise to the reasonable inference that Defendant distorted the truth as he knew it to be because, despite information in the public domain to the contrary, Defendant stated as conclusive fact that Dr. Amin "performed illegal hysterectomies." *Id*. ¶¶ 49-50; *see Overhill Farms*, 190 Cal. App. 4th at 1265-66 (ruling that plaintiff met "actual malice" standard in state court California anti-SLAPP motion by showing evidence that contradictory information was conveyed to defendants and/or union that represented them before defendants made defamatory statement). In fact, Defendant was displeased with the reporting and insinuates that it should have been harsher, and that he knew things that others did not know when he stated in the Publication "I don't understand why this isn't a much bigger story." Doc. 1 at ¶ 50. Making statements that misstate facts as Defendant knows them constitutes knowledge or reckless disregard of their falsity.

Finally, the Complaint alleges evidence of Defendant's motive—"creating buzz and attracting followers so he could sell more books"—which may "support" an ultimate conclusion of actual malice. Doc. 1 ¶ 57; *see Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) ("Although courts must be careful not to place too much reliance on such factors, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence, and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry." (internal citations omitted)).

Defendant argues that his "tweet thread actually negates a finding of actual malice, because it confirms that he relied exclusively on newspaper reports in reputable publications," and that Dr. Amin's argument that the allegations were outrageous without explaining exactly how "is particularly glaring in circumstances where various officials had already publicly asserted that the allegations . . . were sufficiently credible and serious to warrant launching multiple official

1   investigations." Doc. 10 at 32 (citation omitted). To the extent Defendant

2   challenges the factual sufficiency of the Complaint, *Planned Parenthood* requires

3   Dr. Amin be granted discovery and opportunity to supplement the evidence. 890

4   F.3d at 834.

5           But even if the Court were to consider the extraneous Twitter posts, articles,

6   and reports as part of the pleadings, the problem is that the Publication did not

7   transmit the facts as they were known and reported at the time, and then opine or

8   conclude that they merited launching an investigation. Defendant took allegations

9   that were contradicted, contested, and dubious and spread them, falsely and

10  defamatorily, as truth. News articles reported on the allegations and noted that they

11  were contested; politicians issued statements calling for investigations into whether

12  the allegations were true or not. Defendant issued defamatory statements as though

13  the allegations were true, named Dr. Amin and called him "the BUTCHER," and

14  posted two photographs of him. *Compare* Doc. 1 ¶ 50, *with, e.g.*, Docs. 10-7 at 2

15  (prefacing reflections on the allegations with "[i]f true"); 10-8 at 2 (noting "reports"

16  and calling for "an investigation to thoroughly examine allegations"); 10-9 at 4

17  (relaying that the statements were allegations of a nurse and that, through an

18  attorney, Dr. Amin "strongly denied the allegations"). As the Complaint alleges,

19  such a distortion of the known facts clearly gives rise to a reasonable inference that

20  Defendant made the statements with knowledge or reckless disregard of falsity.

21                **b.      Dr. Amin is not a "public official"**

22          Even if the Complaint had not adequately pleaded "actual malice"—which it

23  did—Dr. Amin was not a "public official" required to do so.[2]

24  _____

25  [2] Defendant's Motion to Strike does not argue that Dr. Amin is a "public figure." It

26  uses the term "public figure" twice, but both appear to be used synonymously with

    "public official," and all of Defendant's discussion and citations concern "public

27  officials." *Id*. at 29-30. To the extent that Defendant argues Dr. Amin is a "public

28  figure," he is not. Public figures "have media access enabling them to effectively

1
2
3
4
5
6
7
8
9
10
11

> The Supreme Court's vision of a "public official" is someone in the government's employ who: (1) has, or appears to the public to have, substantial responsibility for or control over the conduct of government affairs; (2) usually enjoys significantly greater access to the mass media and therefore a more realistic opportunity to contradict false statements than the private individual; (3) holds a position in government which has such apparent importance that the public has an independent interest in the person's qualifications and performance beyond the general public interest in the qualifications and performance of all governmental employees; and (4) holds a position which invites public scrutiny and discussion of the person holding it entirely apart from the scrutiny and discussion occasioned by the particular controversy.

12  *Young v. CBS Broad., Inc.*, 212 Cal. App. 4th 551, 560 (2012) (citations omitted).

13  The "touchstone" for whether a plaintiff is a "public official" is "the extent to which

14  the plaintiff's position is likely to attract or warrant scrutiny by members of the

15  public," either because of "the prominence of the position in the official hierarchy,

16  or because the duties of the position tend naturally to have a relatively large or

17  dramatic impact on members of the public." *Id.* (citation omitted).

18      Dr. Amin was not a "public official." The Complaint alleges that, at the time

19  of the Publication, he provided medical services to patients detained at the Irwin

20  County Detention Center. Doc. 1 ¶ 2. The United States Immigration and Customs

21  Enforcement ("ICE"), under the Department of Homeland Security, independently

22  reviews all surgical procedures, requiring the approval of a nurse and an

23  independent physician. *Id.* ¶¶ 59-60. Informed consent, translated by interpreter if

24
25

---

26  defend their reputations in the public arena; and, by injecting themselves into public controversies, they may fairly be said to have voluntarily invited comment and

27  criticism." *Khawar v. Globe Intern., Inc.*, 19 Cal. 4th 254, 265 (1998) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344-45 (1974)). Neither reason for requiring

28  "public figures" to prove actual malice applies to Dr. Amin.

Case No. 21cv01635

OPPOSITION TO MOTION TO STRIKE

1  necessary, was also required in Dr. Amin's treatment of such patients, and he was

2  always supervised by at least one other person as a matter of protocol.  *Id*. ¶¶ 64-66.

3      Dr. Amin accordingly plainly lacks "substantial control over the conduct of

4  government affairs," and his position as a doctor providing services to a detention

5  center that houses ICE detainees did not afford him "significantly greater access to

6  the mass media."  Also, while, like all government and medical positions, Dr.

7  Amin's role had obvious "apparent importance," it was not "beyond the general

8  public interest in the qualifications and performance of all governmental

9  employees."  *See Young*, 212 Cal. App. 4th at 561 (noting that "not all licensed

10  professionals are public officials"); *Franklin v. Benevolent etc. Order of Elks*, 97

11  Cal. App. 3d 915, 924 (1979) (holding that a public high school teacher is not a

12  "public official"); *Smith v. Copley Press, Inc.*, 140 Ill. App. 3d 613, 617 (1986)

13  (Illinois appellate case holding that, notwithstanding binding precedent that a police

14  officer is a "public official," a jailer "who possessed significantly less authority"

15  than a police officer was not a "public official").  And, "apart from the scrutiny . . .

16  occasioned by the particular controversy," his position did not "invite[] public

17  scrutiny and discussion of the person holding it."  *Young*, 212 Cal. App. 4th at 560.

18      Dr. Amin's position stands in contrast to that of (1) the social worker in *Kahn*,

19  whose "assessments and decisions directly and often immediately determined

20  whether the educational, social, medical and economic needs of developmentally

21  disabled children in her care would be adequately met" and accordingly "exercised

22  far more control over the lives she touched than does a classroom teacher," *Kahn v.*

23  *Bower*, 232 Cal. App. 3d 1599, 1611 (1991) (citation omitted); (2) the conservator

24  in *Young*, who "exercised significant sovereign power in assuming control" of a

25  person's "personal and financial affairs," 212 Cal. App. 4th at 561; or (3) even the

26  doctor in *Green*, an Alaska state court case, who "direct[ed] the provision of

27  medical services to all Anchorage area state inmates" and was "in charge of

28

-23-

OPPOSITION TO MOTION TO STRIKE

1  coordinating all medical services in these institutions," *Green v. N. Pub. Co., Inc.*,

2  655 P.2d 736, 737, 741 (Alaska 1982).  Doc. 10 at 29-30.

3          Defendant argues that these cases are analogous because Dr. Amin also has

4  "authority over the lives of the individuals under government purview" by "deciding

5  to perform and then performing hysterectomies and other significant medical

6  procedures." *Id*. at 30.  That is not what the Complaint alleges.  Dr. Amin was

7  bound by protocols to obtain the approval of others, including the patients, before

8  "deciding" to provide such medical services, and he was always supervised when

9  performing.  Doc. 1 ¶¶ 59-64.  He in fact did not have the authority Defendant

10  describes.  Accordingly, Dr. Amin, merely providing medical services to people

11  detained, was more like the deputy public defender in *James v. San Jose Mercury*

12  *News, Inc.*, who the court ruled was not a "public official" because his role was

13  "tempered only by professional constraints applicable to all attorneys and not by any

14  generalized public interest beyond the concern that indigent defendants should be

15  competently and professional represented."  17 Cal. App. 4th 1, 11 (1993).  Dr.

16  Amin is simply not the kind of powerful government figure who has access to the

17  media, made a conscious decision to enter the public fray, and/or wields sovereign

18  authority to make decisions on behalf of others; he is not a "public official."

19  **C.    Leave To Amend**

20          If the Court determines that Defendant's Motion to Strike should be granted,

21  Dr. Amin requests, and the Court should allow, leave to amend the Complaint.

22  "After *Planned Parenthood*, courts have generally granted leave to amend ruling on

23  an anti-SLAPP motion based on legal challenges."  *Lovecruft*, 2020 WL 60199 at

24  *21.  Federal Rule of Civil Procedure 15(a)(2) requires court leave to amend a

25  complaint after 21 days past a responsive pleading or Rule 12 motion, but it also

26  states that courts "should freely give leave when justice so requires."  The Ninth

27  Circuit has held that Rule 15 is "to be applied with extreme liberality." *Maddow*, 8

28  F.4th at 1160-61 (citations omitted).  A district court considers the presence of any

of four factors: "bad faith, undue delay, prejudice to the opposing party, and/or futility." *Id*. (citation and quotation marks omitted).  None of those factors apply here.  And prior to *Planned Parenthood*, the Ninth Circuit held that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with [Rule] 15's policy favoring liberal amendment." *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

## V.    CONCLUSION

The Court should not consider the material attached to Defendant's Request for Judicial Notice in deciding Defendant's Motion to Strike.  Whether or not such material is considered, the Court should deny the Motion to Strike, because Dr. Amin's Complaint is legally sufficient.  Further, even if the Court did conclude that the Complaint as drafted is legally insufficient, the Court should order Dr. Amin to amend his Complaint before dismissing the Complaint with prejudice.


DATED: January 24, 2022             Respectfully submitted,

 By:                               /s/    Wynter L. Deagle
                                   Wynter L. Deagle
                                   Anne-Marie Dao
                                   Yarazel Mejorado

                                   SHEPPARD, MULLIN, RICHTER &
                                   HAMPTON LLP
                                   12275 El Camino Real, Suite 100
                                   San Diego, California 92130-4092
                                   (858) 720-8900 (phone)
                                   (858) 509-3691 (fax)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stacey Godfrey Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com
(*admitted pro hac vice*)
Tiffany N. Watkins
Georgia Bar No. 228805
twatkins@staceyevanslaw.com
(*admitted pro hac vice*)
John Amble Johnson
Georgia Bar No. 229112
ajohnson@staceyevanslaw.com
(*admitted pro hac vice*)

STACEY EVANS LAW
4200 Northside Parkway NW
Bldg One; Suite 200
Atlanta, GA 30327
(770) 779-9602 (phone)
(404) 393-2828 (fax)

Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com
(*admitted pro hac vice*)

CHILIVIS GRUBMAN
DALBEY & WARNER LLP
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

Case No. 21cv01635

OPPOSITION TO MOTION TO STRIKE

<u>PROOF OF SERVICE</u>

**Dr. Mahendra Amin, M.D. v. Don Winslow**
**21CV1635L BGS**

<u>STATE OF CALIFORNIA, COUNTY OF SAN DIEGO</u>

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Diego, State of California. My business address is 12275 El Camino Real, Suite 100, San Diego, CA 92130-4092.

On January 24, 2022, I served true copies of the following document(s) described as **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16** on the interested parties in this action as follows:

Seth D. Berlin (Pro Hac Vice Pending)          *Attorneys for Don Winslow*
(D.C. Bar No. 433611)
BerlinS@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006-1157
Tel: (202) 661-2200
Fax: (202) 661-2299

Robert S. Gutierrez (State Bar No. 143223)
GutierrezR@ballardspahr.com
Omarr K. Rambert (State Bar No. 334534)
RambertO@ballardspahr.com
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Tel.: (424) 204-4400
Fax: (424) 204-4350

☒     **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 24, 2022, at San Diego, California.

_____/s/ Joanna E. Keeping_____
Joanna E. Keeping