Seth D. Berlin (Admitted *Pro Hac Vice*)
 (D.C. Bar No. 433611)
 *BerlinS@ballardspahr.com*
**BALLARD SPAHR LLP**
1909 K Street, NW, 12th Floor
Washington, DC 20006-1157
Tel: (202) 661-2200
Fax: (202) 661-2299

Robert S. Gutierrez (State Bar No. 143223)
 *GutierrezR@ballardspahr.com*
Omarr K. Rambert (State Bar No. 334534)
 *RambertO@ballardspahr.com*
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Tel.: (424) 204-4400
Fax: (424) 204-4350

Attorneys for Defendant
DON WINSLOW

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., <br><br> Plaintiff, <br><br> v. <br><br> DON WINSLOW, <br><br> Defendant. | CASE NO. 21CV1635L BGS <br><br> [Assigned for All Purposes to Hon. M. James Lorenz] <br><br> **REPLY IN SUPPORT OF DEFENDANT DON WINSLOW'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO C.C.P. § 425.16** <br><br> DATE: TBD <br> TIME: TBD <br> CTRM: 5B <br><br> [No Oral Argument Unless Requested By The Court] <br><br> Action Filed: September 17, 2021 |

DMFIRM #401541899 v10.docx

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

A.  Judicial Notice ............................................................................................. 1

B.  Opinion, Rhetorical Hyperbole, and Fair Comment .................................... 3

    *Context* ......................................................................................................... 4

    *Contents* ...................................................................................................... 5

    *Protected Conclusions* ................................................................................ 5

C.  Fair Report Privilege ................................................................................... 8

D.  Public Official/Failure to Plead Actual Malice ........................................... 8

E.  Leave to Amend ......................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................................ 9

*Boley v. Atlantic Monthly Grp.*,
　950 F. Supp. 2d 249 (D.D.C. 2013) ........................................................................ 7

*Boulger v. Woods*,
　917 F.3d 471 (6th Cir. 2019) ............................................................................. 3, 5

*Brahms v. Carver*,
　33 F. Supp. 3d 192 (E.D.N.Y. 2014) ...................................................................... 6

*Clifford v. Trump*,
　339 F. Supp. 3d 915 (C.D. Cal. 2018) .................................................................... 6

*Clifford v. Trump*,
　818 F. App'x 746 (9th Cir. 2020) ..................................................................... 6, 10

*Cochran v. NYP Holdings, Inc.*,
　58 F. Supp. 2d 1113 (C.D. Cal. 1998) ................................................................ 2, 7

*Coles v. Washington Free Weekly, Inc.*,
　881 F. Supp. 26 (D.D.C. 1995) ............................................................................... 7

*Condit v. Dunne*,
　317 F. Supp. 2d 344 (S.D.N.Y 2004) ..................................................................... 3

*Critical Care Diagnostics, Inc. v. Am. Ass'n for Clinical Chemistry, Inc.*,
　2014 U.S. Dist. LEXIS 20711 (S.D. Cal. Feb. 18, 2014) ....................................... 9

*Critical Care Diagnostics, Inc. v. Am. Ass'n for Clinical Chemistry, Inc.*,
　2014 U.S. Dist. LEXIS 28329 (S.D. Cal. Mar. 4, 2014) ........................................ 3

*Daniels-Hall v. Nat'l Educ. Ass'n*,
　629 F.3d 992 (9th Cir. 2010) .................................................................................. 3

*Gallagher v. Philipps*,
　2021 U.S. Dist. LEXIS 184648 (S.D. Cal. Sept. 27, 2021) ............................... 2, 3

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*Ganske v. Mensch*,
  480 F. Supp. 3d 542 (S.D.N.Y. 2020) .................................................................. 4

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
  398 U.S. 6 (1970) ................................................................................................. 5

*Herring Networks, Inc. v. Maddow*,
  8 F.4th 1148 (9th Cir. 2021) ................................................................. 2, 4, 6, 10

*Hiraide v. Vast Sys. Tech. Corp.*,
  2009 U.S. Dist. LEXIS 71383 (N.D. Cal. Aug. 3, 2009) ..................................... 4

*Jankovic v. Int'l Crisis Grp.*,
  822 F.3d 576 (D.C. Cir. 2016) ........................................................................... 10

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ............................................................................ 2, 3

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ............................................................................. 2

*Koch v. Goldway*,
  817 F.2d 507 (9th Cir. 1987) ............................................................................... 1

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ................................................................................................. 5

*Nat'l Ass'n of Letter Carriers v. Austin*,
  418 U.S. 264 (1974) ............................................................................................. 5

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ............................................................................................. 8

*Nicosia v. De Rooy*,
  72 F. Supp. 2d 1093 (N.D. Cal. 1999) ................................................................. 6

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) ............................................................................. 10

*Phoenix Trading, Inc. v. Loops LLC*,
  732 F.3d 936 (9th Cir. 2013) ........................................................................... 4, 5

*Piping Rock Partners v. David Lerner Assocs.*,
  946 F. Supp. 2d 957 (N.D. Cal. 2013) ................................................................. 5

*Polk Cnty. v. Dodson*,
    454 U.S. 312 (1981) ............................................................................................................. 9

*Rapaport v. Barstool Sports, Inc.*,
    2021 U.S. Dist. LEXIS 59797 (S.D.N.Y. Mar. 29, 2021) ..................................................... 6

*Rodriguez v. Panayiotou*,
    314 F.3d 979 (9th Cir. 2002) ................................................................................................ 5

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*,
    230 F. Supp. 3d 290 (S.D.N.Y. 2017) ................................................................................... 6

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ........................................................................................................... 10

*Sweigert v. Goodman*,
    2021 U.S. Dist. LEXIS 251325 (S.D.N.Y. Oct. 29, 2021) ................................................... 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................................. 3

*Todd v. Lovecruft*,
    2020 U.S. Dist. LEXIS 2309 (N.D. Cal. Jan. 6, 2020) ......................................................... 3

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ................................................................................................ 2

*West v. Atkins*,
    487 U.S. 42 (1988) ............................................................................................................... 9

**California Cases**

*Baker v. L.A. Herald Exam'r*,
    42 Cal. 3d 254 (1986) ...................................................................................................... 4, 8

*Good Gov't Grp. v. Superior Ct.*,
    22 Cal. 3d 672 (1978) .......................................................................................................... 4

*Gregory v. McDonnell Douglas Corp.*,
    17 Cal. 3d 596 (1976) .......................................................................................................... 4

**Other State Cases**

*Green v. Northern Publishing Co.*,
    655 P.2d 736 (Alaska 1982) ................................................................................................ 9

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**Other Authorities**

California Civil Code § 47(d) ........................................................................................ 8

California Civil Procedure Code § 425.16 ................................................................... 1

James Madison, 4 Annals of Congress (1794) ............................................................. 8

RESTATEMENT (SECOND) OF TORTS § 566 cmt. b ......................................................... 7

As explained in Defendant Don Winslow's opening Anti-SLAPP papers, he saw heart-wrenching news coverage in which multiple ICE detainees described how Dr. Amin performed unnecessary and nonconsensual hysterectomies and other procedures, confirmed by a nurse from the facility who described him as a "uterus collector." Those reports described the women's Whistleblower Complaint and the immediate response to it by both members of Congress and the DHS OIG, as well as Dr. Amin's $520,000 settlement of prior claims that he had performed unnecessary procedures. Like the millions of others who express pointed views on Twitter and other social media platforms every day, Winslow tweeted out a selection of those news reports; tweeted his conclusion that the charges had merit and were a "HORRIFIC CRIME"; and did so without any awareness that his tweets were false. That is, plain and simple, protected speech.

In response, Dr. Amin's Opposition ("Opp.") confirms that he has engaged in a deliberate strategy to focus myopically on a few passages of text in a single tweet ("Challenged Tweet"), while ignoring its context, including Winslow's other tweets on the same subject. But as then-Judge Kennedy explained, it is precisely this kind of "context" that is often "determinative that a statement is opinion and not fact." *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987) (stating plaintiff was a "well-known Nazi war criminal" was, in context, protected opinion). In arguing otherwise, and in addressing judicial notice, the fair report privilege, and actual malice, Dr. Amin fundamentally misstates governing law in multiple respects.[1]

**A. Judicial Notice:** Dr. Amin contends that, because Winslow's motion raises legal issues and is "treat[ed] similarly to a motion to dismiss," Opp. at 4, the court may not take judicial notice of various government records, news reports, and prior tweets or, if it does, he is entitled to discovery, *id.* at 5-9. He is wrong.

---

[1] Because Dr. Amin does not dispute that California's Anti-SLAPP statute applies to the Challenged Tweet and begrudgingly concedes the law applies in federal court, *see* Opp. at 5 n.1, Winslow's Reply focuses on the second part of the Anti-SLAPP inquiry, namely, whether Dr. Amin can demonstrate a probability of prevailing, in this case because his claims are legally deficient. *See* C.C.P. § 425.16.

1

REPLY IN SUPPORT OF DEFENDANT DON
WINSLOW'S SPECIAL MOTION TO STRIKE      Case No. 21cv1635

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

First, Dr. Amin conflates two related, but distinct doctrines: the "judicially created doctrine" of incorporation-by-reference, which "treats certain documents as though they are part of the complaint," and the broader "rule-established" doctrine of judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (Opp. at 6). Dr. Amin simply ignores *Khoja*'s separate discussion of judicial notice, which confirms that "Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute,'" *i.e.*, one that "is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* at 999; *id.* at 1001-02 (judicially noticing patent application).[2]

Second, Dr. Amin fails to address the host of authorities cited in Winslow's Request for Judicial Notice, Dkt. 10-1 at 1-2, demonstrating that the official records, prior news reports, and prior tweets he submitted are all properly subject to judicial notice. Those records are not offered for their truth, and Dr. Amin does not challenge their authenticity, which is easily verified. *See, e.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (judicially noticing "various newspapers, magazines, and books" because they "indicate what was in the public realm at the time"). Indeed, courts routinely take judicial notice of such documents when adjudicating the protection for opinion and the fair report privilege as a matter of law, including on a motion to dismiss. *See Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1122 n.5 (C.D. Cal. 1998) (taking judicial notice on motion to dismiss of "the overwhelming deluge of publicity attendant to and extensive public discussion of the O.J. Simpson criminal trial"); *Gallagher v.*

---

[2] Moreover, Dr. Amin's own cases confirm that courts adjudicating defamation claims properly consider records for context even under the narrower incorporation-by-reference doctrine. Opp. at 7-8 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (considering adjacent web pages under "incorporation by reference doctrine" to affirm dismissal of libel case); *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1154-55 (9th Cir. 2021) (rejecting *plaintiff's* motion to submit materials not capable of judicial notice, such as a linguistics expert report, but considering article and television broadcast referenced in complaint)). Here, Dr. Amin's Complaint expressly references the Whistleblower Complaint, Winslow's Twitter account, and "various stories about Dr. Amin" in "the news media," Compl. ¶¶ 3, 40-48, so they are properly considered even under incorporation-by-reference principles.

*Philipps*, 2021 U.S. Dist. LEXIS 184648, at *51 (S.D. Cal. Sept. 27, 2021) (judicially noticing charging documents to grant anti-SLAPP motion because, to apply "the fair and true reporting privilege, the Court looks to the underlying [official] proceeding"); *Condit v. Dunne*, 317 F. Supp. 2d 344, 357-358 (S.D.N.Y 2004) (taking judicial notice on a motion to dismiss of news articles that place defendants' "comments in the broader social context" of the "media frenzy" referenced in the complaint).³

Third, Dr. Amin's own cases confirm that a "court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment" or requiring discovery. *Khoja*, 899 F.3d at 999; *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (Opp. at 6) ("courts ruling on 12(b)(6) motions . . . may take into consideration 'matters of which a court may take judicial notice,'" including public websites) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *Critical Care Diagnostics, Inc. v. Am. Ass'n for Clinical Chemistry, Inc.*, 2014 U.S. Dist. LEXIS 28329, at *7 (S.D. Cal. Mar. 4, 2014) (Lorenz, J.) (taking judicial notice on Rule 12(b)(2) motion of FDA records, press releases, articles in other journals, and complaint from another action, even though most of "the documents are not mentioned" in the complaint).

**B. Opinion, Rhetorical Hyperbole, and Fair Comment:** In addressing these three related protections, Dr. Amin again misses the mark. His argument boils down to (a) stripping away any and all context for the Challenged Tweet and (b) asserting that, because it accuses him of performing illegal hysterectomies and that sounds like an assertion of fact, it is not protected. Once again, he is wrong.

---

³ Dr. Amin targets Winslow's prior tweets, relying extensively on *Todd v. Lovecruft*, 2020 U.S. Dist. LEXIS 2309 (N.D. Cal. Jan. 6, 2020) (Opp. at 7, 8, 9, 24), even though it addresses neither judicial notice nor incorporation by reference, and even though it actually helps Winslow. While the court in *Todd* declined to treat two tweets as part of the *same* publication, making it defamatory *per se* (defamatory on its face), the court considered the earlier tweet as part of the *context* for the later tweet, so that, when "read together," the second tweet was defamatory *per quod* (defamatory based on extrinsic facts). *See also Boulger v. Woods*, 917 F.3d 471, 481-482 (6th Cir. 2019) (while "most Twitter users do not sit down and read a Twitter account in chronological order," court considered "allegedly defamatory statement in the context of [defendant's] other tweets"); Gutierrez Reply Decl. ¶ 5.

***Context***:  Dr. Amin concedes that a key part of assessing whether a statement is deemed fact or opinion is "'the general tenor of the entire work,'" including "the medium through which the contested statement is made" and "the tone of the speaker while giving the statement." Opp. at 10 (quoting *Maddow*, 8 F.4th at 1157-59). But he then strenuously resists that very context, presumably because it dooms his claim.

First, the "fact that Defendant's allegedly defamatory statement . . . appeared on Twitter conveys a strong signal to a reasonable reader that this was Defendant's opinion." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 553 (S.D.N.Y. 2020); *id.* at 545 ("If the Internet is akin to the Wild West," Twitter "is, perhaps, the shooting gallery, where verbal gunslingers engage in prolonged hyperbolic crossfire."); *see also Sweigert v. Goodman*, 2021 U.S. Dist. LEXIS 251325, at *27-28 (S.D.N.Y. Oct. 29, 2021) (readers give "less credence" to remarks on Twitter, so tweets calling plaintiff a "cyberstalker" and "deadbeat dad [who] abandons his own son" were opinion).

Second, Winslow's statements were made in the context of "a public debate," amidst tweets by a host of other commentators, such that readers would "anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole," and "language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 601 (1976); *Baker v. L.A. Herald Exam'r*, 42 Cal. 3d 254, 260-61 (1986) (quoting *Gregory*); *Hiraide v. Vast Sys. Tech. Corp.*, 2009 U.S. Dist. LEXIS 71383, at *32 (N.D. Cal. Aug. 3, 2009) (same).[4]

Third, Winslow is a vocal advocate known for expressing opinions, so his "audience is . . . likely to view [his] representations with an awareness of the subjective biases of the speaker." *Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936, 944-45 (9th Cir. 2013) (statement that toothbrushes were "laden with lead and heavy

---

[4] Dr. Amin objects, Opp. at 12, to Winslow's citation to virtually identical language in *Good Gov't Grp. v. Superior Ct.*, 22 Cal. 3d 672, 698 (1978), without noting it was in a dissent. While we apologize for that oversight, the suggestion that the quoted passage is not an accurate statement of the law is not well-taken, particularly where the *Good Gov't* majority itself quoted the above language from *Gregory*. *Id.* at 680.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

metals" was, in context, opinion); *Boulger*, 917 F.3d at 482 (defendant's tweets included "colorful commentary" and "sarcasm, exaggeration, and hyperbole – characteristics more likely seen in an opinion, rather than a statement of fact").

***Contents***:  Although Dr. Amin admits that terms like "BUTCHER" and "HORRIFIC CRIME" are typically protected as rhetorical hyperbole, Opp. at 11-12, he argues that they somehow lose that protection if they "arise from the post's false factual assertions," *id.* at 12.  But the whole point of rhetorical hyperbole is to protect statements that might otherwise sound like false assertions of fact.  Indeed, the accusations at issue in cases like *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6 (1970) ("blackmail"), and *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264 (1974) ("traitor"), were protected despite their allegedly false factual import.

Moreover, the sole case on which Dr. Amin relies involved a plaintiff who fabricated both a real estate transaction and *first-hand experiences* with the plaintiff. *See Piping Rock Partners v. David Lerner Assocs.*, 946 F. Supp. 2d 957, 971 (N.D. Cal. 2013) (Opp. at 11-12).  While readers typically understand descriptions of one's own first-hand experiences as statements of fact, that is decidedly different from Winslow's comments about a government doctor's conduct that occurred in a secure detention facility, thousands of miles away, as to which he has no direct knowledge. *See also Rodriguez v. Panayiotou*, 314 F.3d 979, 985-88 (9th Cir. 2002) (Opp. at 10) (George Michael stating that policeman exposed genitals and masturbated to entrap him reflect first-hand experiences that are understood as assertions of fact).

Finally, Dr. Amin argues, without citation, that the use of hyperbolic language does not signal that the Challenged Tweet is opinion.  Opp. at 11.  That, too, is wrong.  As the Supreme Court explained, the use of "loose, figurative or hyperbolic" language actually *does* "negate the impression" that a statement conveys fact, rather than protected opinion.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990).

***Protected Conclusions***:  At the end of the day, Dr. Amin places great weight on his contention that Winslow's conclusions accusing him of wrongdoing can be

5

proven true or false. But governing Ninth Circuit authority confirms that is not dispositive. For example, in *Maddow*, even though the statement that a television network "'literally is paid Russian propaganda'" was "susceptible of being proven true or false," the Court of Appeals nevertheless ruled that it was protected opinion given "the general and specific contexts." 8 F.4th at 1160. Likewise, in *Clifford v. Trump*, 339 F. Supp. 3d 915, 926 (C.D. Cal. 2018), even though a tweet effectively accusing plaintiff of lying about having been threatened was "verifiable as false," the Court nevertheless ruled that the tweet was protected opinion because it used an "incredulous tone" and was "pointed, exaggerated, and heavily laden with emotional rhetoric and moral outrage." *Id.* Agreeing that the tweet "accused [plaintiff] of lying about having been threatened," a factual sounding statement that could ostensibly be proven true or false, the Ninth Circuit nevertheless affirmed the dismissal on opinion grounds. *Clifford v. Trump*, 818 F. App'x 746, 750 (9th Cir. 2020). Numerous other courts likewise emphasize that, "based on the context in which it was delivered, a statement that is capable of being proven false may still be a non-actionable opinion." *Rapaport v. Barstool Sports, Inc.*, 2021 U.S. Dist. LEXIS 59797, at *30 (S.D.N.Y. Mar. 29, 2021); *see also* Anti-SLAPP Mem. ("Mem.") at 14-17 (citing cases); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1103 (N.D. Cal. 1999) ("conclusion that [plaintiff] embezzled money" was protected opinion).[5]

Even Dr. Amin appears to concede that it is non-actionable to "provide facts and then share commentary," Opp. at 10, and that the hyperlinked news reports in Winslow's earlier tweets properly disclose the basis for his opinions. *See Nicosia*, 72 F. Supp. 2d at 1103 (hyperlinks "adequately disclosed the facts underlying" the opinion expressed). This explains why Dr. Amin strives so mightily to wrest the Challenged Tweet from that context, apparently believing that, if he does so, he can

---

[5] *See also Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 312 (S.D.N.Y. 2017) (stating that plaintiff "engaged in 'extortion, manipulation, fraud, and deceit'" was, in context, protected opinion); *Brahms v. Carver*, 33 F. Supp. 3d 192, 200 (E.D.N.Y. 2014) (stating plaintiff was a "2-bit thief and counterfeiter" in response to news articles describing criminal charges was protected opinion).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

cleverly argue that the tweet is not an opinion based on disclosed facts. But even if the Court disregards Winslow's earlier tweets, it would not change the result. Dr. Amin ignores authority also protecting opinions based on information that is widely known or, for anyone not aware of it, readily available. *See Cochran*, 58 F. Supp. 2d at 1121-23 (protecting opinion based on facts well-known "in the public arena").[6]

Dr. Amin also asserts that Winslow was not permitted to express his views because they were based solely on accusations, which he contends are false. Putting aside that those charges led to investigations by a House Committee and the DHS OIG, an ongoing criminal FBI investigation, and a lawsuit by 40 women, *see* Reply Ex. 1, the discussion of accusations in governmental investigations is privileged, and citizens are free to express opinions about them. *See Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 259 (D.D.C. 2013) (defendant's "statement expressed his personal opinion . . . based on a fact that is undisputed as true in this case, *i.e.*, that the federal government was *investigating* Boley . . . for committing war crimes abroad") (emphasis added); *Coles*, 881 F. Supp. at 30-32 (applying opinion and fair comment protection to commentary on "lawyer's arguments at a public hearing," the descriptions of which were privileged reports of that proceeding).

Thus, the law protects the millions of speakers who use social media daily to express their views about privileged accounts of charges and investigations. Reply Decl. ¶ 6. For example, if, in 1994, a commentator stated, "The D.A. has charged O.J. Simpson with murder," and then stated, "Simpson is a murderer, a BUTCHER who engaged in a HORRIFIC CRIME," readers would understand the first statement as a report of an official proceeding, which is absolutely privileged, and the second as a protected opinion based on that privileged report. The same is true here. Only by

---

[6] *See also Coles v. Wash. Free Weekly, Inc.*, 881 F. Supp. 26, 32 (D.D.C. 1995) ("fair comment privilege is applicable 'even if the facts upon which [the opinion] is based are not included along with the opinion'" but are known or available), *aff'd*, 88 F.3d 1278 (D.C. Cir. 1996); RESTATEMENT (SECOND) OF TORTS § 566 cmt. b (opinion protected even "when the maker of the comment does not himself express the alleged facts on which he bases [his] opinion" because the recipient "know[s] the facts," including "as a result of their notoriety").

artificially truncating Winslow's tweets and ignoring the prior widespread media coverage can Dr. Amin argue that his tweets were not a series of privileged reports about official proceedings, followed by his protected opinions about the accusations.[7]

**C. Fair Report Privilege:** Dr. Amin fundamentally misapprehends Winslow's invocation of the fair report privilege. Section 47(d) protects Winslow's prior tweets, in which he circulated hyperlinks to news reports in "public journals" about the Whistleblower Complaint, the resulting investigations, and Dr. Amin's $520,000 settlement. Dr. Amin repeatedly concedes that the hyperlinked news reports "accurately reflect" the allegations against him, Opp. at 15-16, so they are for this purpose "fair and true." Because those news reports "capture the substance, the gist or sting, of the subject proceedings," Opp. at 15, including to "report the allegations as disputed allegations," *id.* at 16, and clearly attribute the allegations to official proceedings, *id.* at 16-17, they are absolutely privileged as a matter of law. To the extent that Dr. Amin contends that the underlying accusations against him are false, that is entirely irrelevant to the application of the privilege. Mem. at 18-19 (citing cases). Thus, the hyperlinked articles were absolutely privileged reports of the claims against Dr. Amin and, as such, were a proper basis for Winslow's opinions.

**D. Public Official/Failure to Plead Actual Malice:** In *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Court required public officials – later extended to public figures – to submit clear and convincing proof of actual malice to prevail on a defamation claim. The Court imposed this rule because, in our democracy, "'the censorial power is in the people over the Government, and not in the Government over the people'" – even where exercising that right results in "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S. at 270, 275 (quoting James Madison, 4 Annals of Congress, p. 934 (1794)). To be sure, not every government actor is deemed a public official. But, just as all

---

[7] While Dr. Amin erroneously suggests that distinguishing fact from opinion is a jury question, Opp. at 10, 12, the California Supreme Court has repeatedly confirmed that "[t]his is a question of law to be decided by the court." *Baker*, 42 Cal. 3d at 260.

8

police officers are public figures because they have the power to exercise substantial authority over the rest of us, Opp. at 23, here Dr. Amin exercises immense power over female ICE detainees, determining their treatments (even if other personnel must also rubber-stamp them) and performing highly invasive surgeries. He therefore acts as a public official. *See West v. Atkins*, 487 U.S. 42, 55 (1988) (private doctor contracted to treat prison inmates is a state actor, including because "the only medical care [inmates] could receive . . . was that provided by the State").[8] Moreover, as he concedes, Opp. at 22, his participation in the public debate about his conduct, by commenting to the press *prior to* Winslow's tweets, *e.g.*, Dkt. 10-5 (Ex. C) at 3, supports the conclusion that he is properly treated as a public official. As a result, if any of the challenged statements is deemed factual, he must establish actual malice.

In addressing that test, Dr. Amin first argues that it does not apply at all at the preliminary motion stage, despite substantial authority to the contrary in the wake of *Iqbal* and *Twombly*. Mem. at 21-24; *see also Critical Care Diagnostics, Inc. v. Am. Ass'n for Clinical Chemistry, Inc.*, 2014 U.S. Dist. LEXIS 20711, at *16-18 (S.D. Cal. Feb. 18, 2014) (Lorenz, J.) (granting anti-SLAPP motion, *inter alia*, on actual malice grounds). Indeed, the very language he quotes from *Iqbal* confirms that a plaintiff is required to allege "factual content"; he may not simply "plead the bare elements of his cause of action" and "expect his complaint to survive a motion to dismiss." Opp. at 18 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 687 (2009)).

Second, Dr. Amin's Opposition continues to parrot the applicable legal standards and to rely on concepts that do not constitute actual malice as a matter of law. Opp. at 19. For example, he relies on allegations purporting to show the *falsity*

---

[8] *West* expressly distinguishes prison doctors from public defenders, the example invoked by Dr. Amin. Opp. at 24; *see West*, 487 U.S. at 50 (although paid by the state, a public defender "is not acting on behalf of the State; he is the State's adversary") (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 323 n.13 (1981)). Similarly, while Dr. Amin attempts to distinguish *Green v. Northern Publishing Co.*, 655 P.2d 736 (Alaska 1982), on the grounds that the doctor there also held a supervisory position, *West* makes clear that a doctor who is a "treating physician," but also the "medical director of the state prison system," is a government actor just by virtue of treating patients. 487 U.S. at 53 (citation omitted).

1  of the accusations against him rather than Winslow's *knowledge* of that alleged
2  falsity, as required.  Opp. at 19 (contending that "statements were 'false and
3  discredited' and 'contained statements that contradicted known facts'").  Next, Dr.
4  Amin contends that Winslow should have conducted an investigation before
5  tweeting, but failure to investigate is not actual malice as a matter of law.  Mem. at
6  23.  Finally, Dr. Amin alleges that Winslow's tweets were designed to "sell more
7  books," Opp. at 20, but such a motive, even assuming a connection between selling
8  books and tweeting on an unrelated topic, is not germane to the actual malice inquiry.
9  *See Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 596 (D.C. Cir. 2016) ("the mere
10 presence of some ulterior motive – whether a profit motive, a motive to produce the
11 most interesting stories, or a personal desire to harm the subject of a story – is not
12 enough to support a finding of actual malice").  Thus, having not pled any *facts* that
13 would, if proven, demonstrate that Winslow "in fact entertained serious doubts as to
14 the truth of his publication," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), Dr.
15 Amin cannot demonstrate a probability of prevailing on actual malice with respect to
16 any statement deemed factual.  To the contrary, Winslow's firmly-held beliefs about
17 Dr. Amin, based on reports by credible news organizations, including the articles he
18 previously circulated, negates a finding of actual malice.  Mem. at 23-24.

19      **E.  Leave to Amend:**  Dr. Amin concedes that leave to amend may be denied
20 for "futility," Opp. at 25, and does not dispute that the Ninth Circuit so held in cases
21 like *Maddow*, *Clifford*, and *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir.
22 1995), where the speech could not support a claim as a matter of law.  Because he
23 makes no effort to explain why amendment is not futile, the Court should dismiss his
24 Complaint with prejudice, and award Winslow his attorneys' fees and costs.

25 DATED:  February 9, 2022

Seth D. Berlin (Admitted *Pro Hac Vice*)
Robert S. Gutierrez
Omarr K. Rambert
**BALLARD SPAHR LLP**

By: */s/ Robert S. Gutierrez*

Attorneys for Defendant Don Winslow

10

REPLY IN SUPPORT OF DEFENDANT DON
WINSLOW'S SPECIAL MOTION TO STRIKE     Case No. 21cv1635