UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHENDRA,<br><br>        Plaintiff,<br><br>v.<br><br>DON WINSLOW,<br><br>        Defendant. | Case No.: 3:21-cv-1635-L-BGS<br><br>**ORDER ON DEFENDANT'S MOTION TO STRIKE UNDER C.C.P. § 425.16.** |

Pending before the Court is Defendant's motion to strike. Plaintiff opposed, and Defendant replied. The Court decides the matter on the papers submitted and without oral argument. Civ. L. R. 7.1. For the reasons stated below, the Court **DENIES** the motion.

**I. BACKGROUND**

Plaintiff is a medical doctor and works as an OB/GYN. (ECF No. 1, Complaint ("Compl.") at ¶ 1).[1] Plaintiff provided medical services to patients at the Irwin County Detention Center ("ICDC"). (*Id*. at ¶ 2).

In September 2020, a nonprofit organization sent a letter to the Department of Homeland Security related to reports about high rates of hysterectomies at ICDC. (*Id*. at ¶¶ 42, 46). The letter also expressed concern over COVID-19 measures. (*Id*. at ¶ 46). Plaintiff was not identified in the letter. (*Id*. at ¶ 45). The organization then shared the letter with several media outlets. (*Id*.

---

[1] For purposes of this order, the Court accepts as true Plaintiff's factual allegations.

at ¶ 47). In late September, there were various stories on Plaintiff related to medical procedures at ICDC. (*Id*. at ¶ 48).

On September 20, 2020, Defendant Don Winslow – a *New York Times* bestselling author – published statements on his Twitter account about Plaintiff:



(ECF No. 21, Plaintiff's Opposition ("Oppo") at p. 1) ("Contested Tweet"). Defendant has over 600,000 followers on Twitter. (Compl. at ¶ 41).

Plaintiff contends the statements are false. (*Id*. at ¶ 6). Plaintiff alleges he only performed two hysterectomies on patients at ICDC and the procedures were medically necessary. (*Id*. at ¶ 7). The patients provided their informed consent to the procedures. (*Id*. at ¶ 8). Moreover, the United States Immigration and Customs Enforcement approved the procedures after it conducted an independent review of the treatment, including review from a nurse and an independent doctor. (*Id*. at ¶¶ 8, 60-63). That review process takes about two weeks. (*Id*. at ¶ 60).

Five days before the Contested Tweet, it was revealed that the allegations about Plaintiff were not based on first-hand accounts, and ICDC (in addition to the hospital) confirmed Plaintiff only performed two hysterectomies on ICDC patients. (*Id*. at ¶ 49).

Plaintiff asserts a defamation claim against Defendant. Defendant now moves to strike the complaint under California Code of Civil Procedure ("C.C.P.") section 425.16.

II.     **LEGAL STANDARD**

Under C.C.P. section 425.16, "a cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States

Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." "Defendants sued in federal courts can bring anti-SLAPP motions to strike state law claims." *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *CoreCivic, Inc. v. Candide Group*, No. 20-17285, (9th Cir. Aug. 30, 2022).

"To prevail on an anti-SLAPP motion, the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021).[2] "If the defendant satisfies this requirement, the burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal. The district court must grant the defendant's motion and dismiss the complaint if the plaintiff presents an insufficient legal basis for the claims or no reasonable jury could find for the plaintiff." *Id*.

"In order to prevent the collision of California state procedural rules with federal procedural rules, [courts must] review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018). "A defendant may move to strike on purely legal arguments, in which case [courts] analyze the motion pursuant to [Federal Rules of Civil Procedure] 8 and 12." *Herring Networks, Inc.*, 8 F.4th at 1155. "Or a defendant may assert a factual challenge, which invokes the same treatment as a motion for summary judgment, triggering discovery." *Id.* at 1156; *Planned Parenthood Fed'n of Am.*, 890 F.3d at 833-34 ("requiring a presentation of evidence without accompanying discovery would improperly transform the motion to strike . . . into a motion for summary judgment without providing any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure.")

Here, Defendant does not assert factual challenges, which would trigger discovery. The Court therefore must apply the standards under Rules 8 and 12.

---

[2] Unless otherwise noted, all internal citations, quotation marks, and brackets are omitted.

### III. DISCUSSION

The first issue is whether Plaintiff's claim arises from Defendant's act made in furtherance of his right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue. C.C.P.§ 425.16.

The defamation claim relates to Defendant's statements on Twitter. The statements concern the federal government, including the Department of Homeland Security, and medical procedures conducted on detainees at detention centers. Based on that, the Court finds Defendant met his burden. Plaintiff also did not present any argument on this prong.

Next, the Court will address Defendant's three arguments as to why Plaintiff cannot establish a reasonable probability that he will prevail on his claim: (1) Plaintiff is a public official and cannot establish Defendant's actual malice, (2) the Contested Tweet is privileged under California law, and (3) the Contested Tweet is protected opinion, rhetorical hyperbole, and fair comment.

**1. Public Official and Actual Malice**

Under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), a public official cannot recover damages for defamatory statements relating to official conduct unless they prove those statements were made with "actual malice." A statement is made with "actual malice" if it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id*. at 280.

Defendant argues Plaintiff was a public official.[3] Plaintiff disagrees. A public official is a person whose position "would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." *Rosenblatt v. Baer*, 383 U.S. 75, 86 at n.13 (1966). The position must have "such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees." *Id.* at 86. This includes having "substantial responsibility for or control over the conduct of governmental affairs." *Id.* at 85.

---

[3] Defendant does not cite or analyze the public figure standard. *Planet Aid, Inc. v. Reveal*, No. 21-15690, 2022 U.S. App. LEXIS 22258, at *14 (9th Cir. Aug. 11, 2022). The Court will therefore not address it.

Here, Plaintiff worked as a contractor at ICDC. He provided medical treatment after receiving informed consent from the detainees and approval from the Department of Homeland Security, which required review from a nurse and an independent doctor. There are no allegations to show Plaintiff had "substantial responsibility for or control over the conduct of governmental affairs," including control over the detainees or official policies (*e.g.*, what treatments detainees were able to receive). *Rosenblatt*, 383 U.S. at 85. There is also nothing in the pleadings to suggest Plaintiff enjoyed "significantly greater access to the channels of effective communication and hence [had] a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Gertz v. Robert Welch*, 418 U.S. 323, 344 (1974). Although Plaintiff apparently provided comments to news organizations, private individuals have that same access when involved in a news story (*i.e.*, requests for comments). Moreover, the scrutiny Plaintiff received is connected to the particular charges at issue in this action.[4] Based on the allegations, Plaintiff was not a public official.

**2. Privilege Under California Law**

Defendant argues the Contested Tweet is protected under California Code of Civil Procedure section 47(d). That section established a privilege for "a fair and true report in, or a communication to, a public journal . . . of public official proceeding."

Defendant's argument on the "public journal" element is conclusory: "Twitter is a mass media platform that easily qualifies as a public journal." (ECF No. 10, Motion to Strike at p. 18). Defendant supports that statement by citing *Carver v. Bonds*, 135 Cal. App. 4th 328, 351 (2005). However, *Carver* involved a newspaper and its website, not Twitter or a similar platform. The other case, *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157 (2017), did not involve the privilege or defamation. In fact, the portion of the opinion Defendant cites concerned whether a judge should have recused from the underlying matter (a civil enforcement action) due to the judge's Twitter activity. *Id*. at 1173-74.

---

[4] In his reply, Defendant cites *West v. Atkins*, 487 U.S. 42 (1988). It is not appropriate to consider new case law raised for the first time in a reply. Regardless, *West* involved a section 1983 claim. The issue was whether a private doctor was "acting under the color of state law," not whether he was a public official for purposes of *New York Times Co. v. Sullivan*.

Based on the limited record, the Court is not persuaded Twitter reasonably fits within the term "public journal." *Merriam-Webster* defines "journal" as "a daily newspaper or a periodical dealing especially with matters of current interest."[5] Twitter is a micro-blogging platform, not a newspaper or periodical. Regardless, the Contested Tweet does not discuss or cite any official proceeding. Instead, the statements concern Plaintiff's alleged conduct as a doctor at detention centers. Although Defendant contends other posts on Twitter referred to investigations, those posts are separate from the one at issue here. Based on the allegations, the privilege is not applicable.

### 3. Protected Opinion, Rhetorical Hyperbole, and Fair Comment

To state a defamation claim, Plaintiff must allege "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 826 (9th Cir. 2008).

The Ninth Circuit has adopted a three-part test to determine whether a statement is an assertion of fact, and therefore actionable: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).

Defendant, in the Contested Tweet, asserted an objective fact: Plaintiff committed a crime. More specifically, Plaintiff "performed illegal hysterectomies" on women in detention centers and engaged in "forced sterilization." *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). The arguably hyperbolic language in the Contested Tweet, "This is the BUTCHER," does not negate the assertion of fact. That language simply corresponds with the statement that Plaintiff performed illegal surgeries on detainees. This assertion may be proved true or false.

---

[5] Defendant does not raise any statutory interpretation argument. For purposes of statutory interpretation, the Court must "determine what meaning the state's highest court would give to the law." *Bass v. Cty. of Butte*, 458 F.3d 978, 981 (9th Cir. 2006). To do that, it must apply California's "rules of statutory interpretation." *Id*. Under California law, the plain meaning of the term normally controls. *Coal. of Concerned Cmtys., Inc. v. City of L.A.*, 34 Cal. 4th 733, 737 (2004).

Defendant argues the Court should consider his earlier tweets. It is reasonable to infer the Contested Tweet, when appearing on Twitter users' feeds, would not have been presented at the same time as Defendant's earlier tweets. Therefore, even if it would be appropriate to consider the other tweets (which are not in the complaint or relied upon in it), they would not alter the above analysis at this stage. *See* Restatement Second of Torts, § 563(d) ("the context of a defamatory imputation includes all parts of the communication that are ordinarily heard or read with it."); *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995) ("to determine whether a statement implies a factual assertion, we examine the totality of the circumstances in which it was made. First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work."); *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 389 (2004) ("courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication is directed.")

Defendant also relies on the assertion that his followers would have known any tweet of his was simply an opinion. But it is unclear from the record that only Defendant's followers saw the Contested Tweet. It is reasonable to infer, which the Court must do in Plaintiff's favor, that non-followers saw the Contested Tweet in their feed, based on the more than 9,000 retweets of the Contested Tweet. Further, Defendant argues Twitter is known as a forum for expressing opinions about controversial issues, and therefore any reader would know Defendant's statements were only an opinion. This argument is rejected because it is reasonable to infer that, in addition to opinions, Twitter users may tweet verifiable, objective facts. Lastly, Defendant cites the heated public debate over immigration policy and treatment of detainees that was occurring when he posted the Contested Tweet. But that context does not alter Defendant's assertion of fact as to Plaintiff's criminal conduct.

///
///
///
///
///
///

Based on the record, Plaintiff's factual allegations are sufficient to state a defamation claim. The Court therefore **DENIES** the motion.

### IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** the motion.[6]

**IT IS SO ORDERED**.

Dated:  September 9, 2022

_____
Hon. M. James Lorenz
United States District Judge

---

[6] Defendant requests the Court take judicial notice of several documents, including the whistleblower complaint, news articles, press releases, and earlier tweets. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is not subject to reasonable dispute." *Id*. at 999; *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) ("a court may not take judicial notice of a fact that is subject to reasonable dispute," even if contained in public records.") A fact is "not subject to reasonable dispute if it is generally known, or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja*, 899 F.3d at 999. The documents would not alter the Court's analysis on the sufficiency of the pleadings. Therefore, the Court denies Defendant's request for judicial notice. Fed. R. Civ. P. 201.